**UNION ELECTRIC COMPANY, a Corporation, Plaintiff, Respondent,**

**v.**

**PACIFIC INDEMNITY COMPANY, a Corporation, Defendant, Appellant.**

No. 32658.

St. Louis Court of Appeals.

Missouri.

Nov. 30, 1967.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, Paul S. Brown, St. Louis, for defendant-appellant.

Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, for plaintiff-respondent.

RUDDY, Acting Presiding Judge.

This is an action by insured, Union Electric Company, against insurer, Pacific Indemnity Company, to recover under a Manufacturers' and Contractors' Liability Policy a sum paid by Union Electric Company in settlement of an action against it which the insurer had refused to defend on the ground that the policy did not provide coverage for the occurrence and injury that formed the basis of the action settled by the insured, Union Electric Company. From a judgment of $12,554 in favor of insured the insurer appealed. The amount of the judgment does not seem to be contested. The only issue for determination is whether the action settled by the insured is within the

coverage of the policy. Hereinafter, we shall refer to Union Electric Company as the insured, Pacific Indemnity Company as the insurer and Davey Tree Expert Company as Davey.

The insured and Davey executed a written contract dated March 18, 1960 which by its terms was effective from March 7, 1960 until March 1, 1961 inclusive. In this contract it was provided that Davey shall cut and trim trees and dispose of all trimmings as required where designated by an authorized representative of the insured along the distribution and transmission lines of the insured located in the City of St. Louis and St. Louis County. The contract provided that Davey shall furnish for that purpose a sufficient number of supervisors, motor cars for the use of said supervisors, also furnish tree trimmer foremen, tree trimmer journeymen, tree trimmer apprentices, and brushcutters to handle such work expeditiously; together with sufficient trucks for the transportation of men and removal of brush; and all equipment, tools, and supplies which may be necessary for the doing of any and all work required to be done by Davey under the terms of the agreement.

Pursuant to said contract Davey was engaged in trimming trees along a 2400 volt overhead distribution circuit of the insured located in an alley in the rear of 5215 Enright Avenue in the City of St. Louis. Three employees of Davey were engaged in the performance of this work at said location. None of insured's employees was present. Among the three was Walter Palmer. Palmer while working in an aerial bucket that was elevated and lowered hydraulically by the movement of levers operated by the person in the bucket and while cleaning tree limbs away from the wires by means of a pruning shear operated by compressed air came into contact with the 2400 volt uninsulated distribution circuit of the insured and as a result Palmer was severely burned and required hospitalization. He was incapacitated for two years.

Palmer filed suit against insured, Union Electric Company, for his injury. His allegations of negligence generally charged the maintenance of uninsulated or inadequately insulated high voltage electrically powered transmission wires and a failure to warn of their presence. Insured called upon insurer to defend the suit brought by Palmer and insurer refused. Thereafter, insured and Palmer agreed to settle said suit for the sum of $30,000 which insured paid. There is no contention by the insurer that this sum was unreasonable. The insured had other insurance with the Aetna Casualty & Surety Company covering its loss on this claim which served to make the insurer herein, if liable, subject to only one-third of the total loss.

Following the settlement the insured herein filed this action against the insurer and against Davey Tree Expert Company and its insurer, the Aetna Casualty & Surety Company. The insured herein effected a settlement with Davey and Aetna and dismissed its action as to them leaving only the insurer herein as defendant. Insured in its petition, after stating the provisions of the contract between it and Davey, alleged that " * * * Davey Tree Expert Company alone controlled the work being performed under said contract and the persons doing it. However, plaintiff generally supervised such work and inspected it from time to time for the purpose of ascertaining whether or not it was being properly performed. In order to aid in such inspection, defendant Davey Tree Expert Company advised plaintiff each day the locations at which work would be performed the following day." In its answer the insurer admitted that Davey Tree Expert Company alone controlled the work performed by it under said contract and the persons performing such work, but denied that plaintiff supervised, generally or otherwise, such work or the performance thereof. Insurer further alleged in its answer that if plaintiff (insured herein) did "supervise" any such work of said Davey Tree Expert Company, such was solely related and limited to the result of such work

and not as to the method, manner or means for the performance thereof.

The policy in question issued by insurer provides the following coverage:

## "INSURING AGREEMENTS"

"1. Coverage A—Bodily Injury Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by (an) occurrence and arising out of the hazards hereinafter defined."

## "Definition of Hazards"

"Division 3—Independent Contractors

Operations performed for the named insured by independent contractors and general supervision thereof by the named insured, if the occurrence (happens) in the course of such operations."

## "EXCLUSIONS"

"This policy does not apply:

\* \* \* \* \* \*

(e) under division 3 of the Definition of Hazards, to any act or omission of the named insured or any of his employees, other than general supervision of work performed for the named insured by independent contractors."

The instant case was tried without a jury and in the course of the trial Lee Crawford testified that he was Line Clearance Supervisor for insured during the month of July 1960 at which time Palmer was injured. He said that he would schedule the work for the tree trimmers and would check their work to see that they were giving the insured the best job at the least possible cost to the insured. He said it was the practice of the insured to enter into contracts with "tree trimming concerns" to have the branches of the trees near the Union Electric distribu-

tion and transmission lines cleared away. The purpose of trimming the tree branches was to keep the lines in operation. Crawford said he deals with the contractor himself or with the contractor's supervisor in effectuating the work of trimming the branches away from the lines. He would show Davey or Davey's supervisor the area plat wherein Davey was to clear away tree limbs from insured's lines. This was in the form of a tree trimming order that was given to Davey attached to an area map that would cover all of the lines in the given area. Pursuant to an order and plat given Davey by Crawford, Davey undertook to clear the branches away from trees in the area where Palmer received his injury. Crawford had various men working for him at the time of Palmer's injury and Davey would advise him where the tree trimmers would be performing work on certain dates. Crawford would receive a route sheet from Davey which would show the location where Davey and his men would be working. Crawford or his men would go to the locations where Davey would be working in order to examine and inspect the work and if there was any deficiency in the quality or the quantity of the work Crawford would be advised of this by his men, whereupon, he would contact the supervisor of Davey and discuss the matter with him. The discussion would relate to the fact that there was not enough clearance left between the lines or " * * * that men were not working assiduously enough, * * *" so that it would increase insured's contract price. In his cross examination Crawford said that the work of Davey was checked to see that it was properly performed under the contract.

As pointed out heretofore Davey Tree Expert Company was joined as defendant by the insured in the instant action. Before the settlement was effected with Davey by the insured, Davey filed a motion to dismiss Count I of the insured's petition, which count was directed against Davey. In a memorandum filed with the trial court in opposition to the motion of Davey, insured

stated, "Control of this work and the Davey employees performing it resided completely in Davey, the independent contractor. * * The parties to the written contract (between plaintiff and Davey) knew that Davey, not Union (plaintiff) would be in control of the work and the persons performing it." The above excerpt from the memorandum was offered in evidence by the insurer, as an admission against interest made by the insured, for the purpose of showing that the insured admitted that control of the tree trimming work resided completely in Davey and not the insured.

Insurer contends that insured's petition and admission in the memorandum it filed in opposition to the motion of Davey to dismiss insured's petition as to it demonstrates clearly that Davey alone controlled the work being performed under said contract and the persons doing it. We agree that Davey so controlled the work and the persons doing it and by virtue of such control was an independent contractor in the operations performed for insured. We also agree that there is no evidence showing that insured supervised the method, manner or means by which Davey performed the work. In this connection insurer makes its only contention that the absence of such evidence precludes recovery because insured failed to show that it "generally supervised" the work performed by Davey, which showing it contends was a prerequisite to recovery under the hazards insured against and under the exclusion clause. We disagree with this contention for reasons that will appear later.

Opposed to insurer's contention is the position of the insured wherein it contends that the insurance policy involved in this case provides for two separate and distinct coverages, namely, (1) operations performed for insured by independent contractors, and (2) general supervision by insured of operations performed for it by independent contractors. Insured contends that the Palmer case fell within each of such coverages and outside the policy exclusion. We need not discuss whether or not the policy provided the first coverage suggested by insured because we think insured was covered by the second suggested coverage, namely, that it did "generally supervise" the operations performed by its independent contractor, Davey. Insured contends that the term "general supervision" in the second coverage and its use in the exclusion clause cannot be considered synonymous with "control", since control of the work would destroy the independent contractor relationship and leave the insured without any insurance. The term "general supervision" means that kind of supervision which an owner-insured customarily undertakes and that insured undertook with respect to the work of Davey, its independent contractor.

Before giving our reasons for disagreeing with the contention of insurer we mention some of the applicable rules governing the interpretation and construction of insurance policies.

 The policy is a contract. Plain and unambiguous language must be given its plain meaning. The insurance contract should be construed as a whole; but, insofar as open to different constructions, that most favorable to the insured must be adopted. Dieckman v. Moran, Mo., 414 S. W.2d 320; Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L. R. 615; Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 210 A.2d 221. The policy must be liberally construed in favor of insured, so as not to defeat, without a plain necessity, insured's claim to the indemnity which, in making the insurance it was its object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain insured's claim and cover the loss must, in preference, be adopted. Soukop v. Employers' Liability Assur. Corporation, Limited, of London, England, 341 Mo. 614, 108 S.W.2d 86; Ohio Cas. Ins. Co. v. Flanagin, supra, 29 Am.Jur., Insurance, § 258, p. 640.

 It is well settled that when the terms of a policy are ambiguous, equivocal,

and uncertain so that the intention of the parties cannot be clearly ascertained by the ordinary rules of construction, the questionable terms are to be construed against the insurer and in favor of the insured. Perkins v. Perkins, Mo.App., 284 S.W.2d 603; Bituminous Casualty Corporation v. Walsh & Wells, Mo.App., 170 S.W.2d 117, 29 Am. Jur., Insurance, § 258, p. 640. Policy provisions designed to cut down, restrict, or limit insurance already granted, or introducing exceptions or exemptions, must be strictly construed against the insurer. Bituminous Casualty Corporation v. Walsh & Wells, supra, Wendorff v. Missouri State Life Ins. Co., supra, Ohio Cas. Ins. Co. v. Flanagin, supra.

We understand insurer to hold in its contention that it was necessary for insured to show by the evidence that it supervised the method, manner and/or means employed by Davey in discharging the obligation Davey had assumed under the contract; that insured's failure to produce such proof precludes recovery because the plain meaning of the provision under "Definition of Hazards" is that the operations of an independent contractor must be under the general supervision of the insured, i.e., insured must have supervised the method, manner and/or means employed by Davey in discharging the obligation it had assumed under the contract, in order for policy coverage to apply.

To further explain its position, in its reply brief insurer says that under the law, there could not be any liability to insured, with respect to injuries to someone arising out of the negligence of Davey, unless insured had retained the right to, or did, control the activities of Davey in the discharge of the latter's contractual obligation. It then says should insured, although engaging the services of an independent contractor to perform some service for it, nevertheless, either retain the right to, or exercise, control over the method, manner and means of carrying out the work, then, and in such event, insured would have protection under defendant's policy. It says that, precisely,

is the contingency for which coverage was sought and the premium paid.

■ Insurer is in error in several respects in connection with the aforesaid statement. Insured's liability to Palmer arose from a nondelegable duty it had to him and others to warn of the presence of the 2400 volt overhead uninsulated distribution circuit maintained by it. The inherent dangerous nature of this uninsulated high voltage circuit created a primary, nondelegable duty upon the insured to take measures commensurate with the danger. We agree that insured would not have been liable for injuries to Palmer arising out of the negligence of Davey, the independent contractor. There is an exception to this where the work of the independent contractor, during its progress, presents a risk of bodily harm to others, if the risk is such that should have been recognized by the insured and if injury results to a third person then the nondelegable duty is imposed and the insured held liable. Stubblefield v. Federal Reserve Bank of St. Louis, 356 Mo. 1018, 204 S.W.2d 718; McDonald Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo., 323 S.W. 2d 788; Southwestern Bell Tel. Co. v. Rawlings Mfg. Co., Mo.App., 359 S.W.2d 393.

An answer to a further inconsistency present in insurer's statement is that if insured retained the right to or exercised control or supervision over the method, manner and means of carrying out the work, then insured would not have been engaging the services of an independent contractor, therefore, there would be no coverage, because the insurer was liable only for bodily injury caused by an occurrence arising out of the operations performed for the named insured *by independent contractors.*

In the case of Boulch v. John B. Gutmann Const. Co., Mo.App., 366 S.W.2d 21, l. c. 28, when defining an independent contractor, we said:

"In the case of Williamson v. Southwestern Bell Telephone Co., Mo., 265 S.

W.2d 354, l.c. 358, the court gave the general rule and definition of contractor as found in Restatement, Agency, Sec. 2(3) as follows: ' "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." ' The court further said: 'Under the rule, "stipulations which entitle the employer to exercise a certain measure of control over the work, but go no further than to enable him to secure that it shall be properly performed, do not affect the quality of contracts which, apart from those stipulations, would be construed as independent." Annotation 20 A.L.R. 684, 687.' * * * "

Therefore, if insured had supervised or retained the right to supervise Davey and its employees as to the method, manner and means of carrying out the work which was to be performed under the contract, it would have destroyed the relationship of independent contractor, then Davey would not have been an independent contractor within the contemplation of the insurance policy in question.

■ The words "general supervision" are not defined in the policy. What then is meant by the term "general supervision" as used in connection with the operations of an independent contractor? Obviously, as used in the policy it is susceptible of more than one meaning and its use in connection with the operations of an independent contractor presents an uncertainty and ambiguity as to its meaning which must be construed in favor of insured. It becomes necessary to apply the general rules of construction to learn the meaning of the words "general supervision."

■ The factual situation presented shows that insured's contract with Davey required the insured to designate the areas along the distribution and transmission lines of insured where Davey would cut and trim

the trees. This designation and a subsequent inspection by Crawford and his men of the work performed by Davey and his employees to see if there was any deficiency in the quality of the work performed by Davey and to see that Davey's men were working assiduously enough so that it would not increase insured's contract price was merely to secure by way of proper supervision and inspection a compliance with Davey's contract and was not the exercise of control with respect to the physical conduct of Davey's work or employees in the performance of the contract. A liberal interpretation of the words "general supervision" surely includes the supervisory duties of insured's employees in designating the area along the distribution and transmission lines where Davey would cut and trim trees and the providing of area plats in regard thereto and the subsequent inspection by insured's employees. This would be supervision that would not destroy the relationship of independent contractor of Davey with the insured. Also, the acts or omissions of insured charged by Palmer are within the words "general supervision" of work performed for the named insured by independent contractors. There is no doubt that the injury and occurrence took place during operations performed by the independent contractor for the named insured and arose out of said operations.

Webster's Third New International Dictionary, Unabridged, defines supervision as "(1) the act, process or occupation of supervising: direction, *inspection, and critical evaluation.*" The same authority defines supervise as "(1) to look over, inspect, oversee." Black's Law Dictionary, 4th Ed. defines supervise as follows: "To have general oversight over, to superintend, or *to inspect.*" In the case of Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 210 A.2d 221, a "Manufacturers and Contractors Schedule Liability Policy," similar to the one in the instant case, was before the court. In construing the term "general supervision" the court said: " * * * we conclude that these words are herein used in the sense

that the prime contractor supervises the work of the subcontractor only to the extent necessary to see that the work is done in accordance with the contract and specifications. They do not connote control of the means to accomplish the required result. * * *"

In the case of Duke Power Company v. Indemnity Insurance Company, 4 Cir., 229 F.2d 588, the defendant insurance company had issued to the plaintiff a liability policy somewhat similar to the one in the instant case. In that case the Combustion Engineering Company entered into a contract with Duke as an independent contractor to furnish and install two steam generators at the plant of the power company. In the course of the installation one of Combustion's employees, Jackson, was killed. The court held that the policy comprehended two separate coverages as contended by insured in the instant case. One of the coverages held to be within the policy was supervisory acts of the insured in connection with the operations of the independent contractor. The court said: "We think it is also clear that the death of Jackson was caused by a supervisory act of the insured in connection 'with such work.' It is not necessary to restrict these words to the work to be performed by Combustion in order to give them a reasonable interpretation. * * *"

Finally, the case of Southwestern Bell Tel. Co. v. Western Casualty & Sur. Co., 269 F.Supp. 315 (U.S. District Court—Eastern District of Missouri) involves an insurance contract with provisions similar to the instant contract and with a factual situation identical to the one in this case. In that case workmen employed by Missouri Conduit and Construction Company, which was operating as independent contractor under contract with Southwestern Bell Telephone Corporation to enlarge several manholes in the City of St. Louis, came into contact with and struck an energized electric power cable and suffered severe electric shock. Each of the workmen filed suit against Bell. Bell requested the insurer to defend the suits but it refused on the ground that the claims were not within the coverage of the policy. There the court held that the alleged negligence of insured in failing to provide adequate plats and warnings was within the scope of "general supervision" and was thus not within policy exclusions of acts or omissions of insured other than general supervision of work performed for insured by independent contractors, and thus the insurer was obligated to defend and pay damages assessed in actions against insured for injuries sustained by employees of independent contractor when they struck the energized electric power cable while enlarging manholes for insured.

■ Construing the questioned words liberally and most favorably to insured, as we must, we hold that the words "general supervision" as used in the policy in question do not mean the supervision of the method, manner and/or means employed by Davey in discharging the obligation it had assumed under the contract, which supervision we find, under the circumstances present in this case, would mean control of Davey and Davey's employees in the discharge of Davey's obligation. We hold that the words mean supervision of the work of Davey only to the extent necessary to see that the work was done in accordance with the contract and specifications and to provide, pursuant to the contract, the area of the transmission lines where Davey would cut and trim the trees. Palmer's claim fell within the coverage of the policy. Insured's line clearance supervisor and the men working under him knew that Palmer would be working in the area of the uninsulated transmission line because they had supplied Davey with the area and location of these lines. Insured's failure to warn Palmer arose out of its supervisory function, inasmuch as this was the only connection insured had with the work.

The Palmer suit was within the coverage of the policy and it was the obligation of insurer to defend said suit. It is clear from

what we have said that the judgment of the trial court should be affirmed. It is so ordered.

WOLFE, J., and SAMUEL E. SEMPLE, Special Judge, concur.