**UNIVERSAL UNDERWRITERS INSURANCE CO.,**
**Respondent,**

v.

**DEAN JOHNSON FORD, INC., Appellant.**

**No. WD 49897.**

Missouri Court of Appeals, Western District.

Aug. 22, 1995.

Rehearing Denied Oct. 3, 1995.

530

Max Von Erdmannsdorff, Kansas City, for appellant.

Thomas D. Billam, Eriv Van Beber, Kansas City, for respondent.

Before KENNEDY, P.J. and SMART and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Universal Underwriters Insurance Company (Universal) filed this declaratory judgment action to determine whether the particular insurance policy it issued to Dean Johnson Ford, Inc. (Dealership) for the year June, 1989 to June, 1990 provided coverage or a duty to defend a lawsuit filed against the Dealership by the Shrewsburys in January, 1990. The Shrewsburys claimed that the Dealership was liable to the Shrewsburys for negligence, breach of warranty, fraudulent misrepresentation and violation of Missouri merchandising laws in that it sold the Shrewsburys a defective automobile which had been damaged in a previous accident.

The trial court granted summary judgment to Universal. It found that the policy in question did not provide coverage and provided defense costs only up to the amount of $10,000. The Dealership appeals. We find that the policy provided for up to $20,000 in legal defense costs and further that questions of fact exist as to whether the umbrella provisions of the policy, when read in conjunction with earlier versions of the policy or other policies, provide coverage for some or all of the Shrewsburys' claims. We also find

that it was premature to grant summary judgment when Universal had failed to respond to outstanding discovery requesting other policies. Accordingly, we reverse and remand.

## I. *Factual and Procedural Background*

The Shrewsburys alleged that they purchased a car from the Dealership in March of 1987, believing it to be in good condition. They discovered in November, 1987 that the automobile had been damaged in a prior accident. After learning this, the Shrewsburys took the vehicle to the Dealership and told Mr. Johnson that the vehicle had been wrecked prior to their purchase. On January 25, 1990, the Shrewsburys filed suit against the Dealership. This litigation shall be referred to as "the underlying suit."

The Dealership notified Universal of the underlying suit by the Shrewsburys in February, 1990. In June, 1992, Universal filed a Petition for Declaratory Judgment against (1) the Dealership, (2) Dean and Margie Johnson (Dean Johnson was the owner of the Dealership), and (3) the Shrewsburys. Universal did *not* request a determination that *none* of its policies provided coverage for or a duty to defend the Shrewsburys' suit. To the contrary, Universal's action specifically sought determination solely of the question whether coverage or a duty to defend were provided by Policy No. 454997P issued by Universal to the Dealership and solely as that policy was written for the period from June, 1989 to June, 1990. The policy in question was attached to Universal's Petition as Exhibit A.

The Dealership and the Johnsons, in answering the Petition for Declaratory Judgment, denied that Exhibit A was the policy under which they were insured at the time of sale and related events in 1987. They argued it was inappropriate to construe coverage in a vacuum solely by examining coverage under a single year of a single policy. They requested that the court require Universal to provide them with the policy in effect at the time of the sale to the Shrews-

burys in 1987, and filed a Request for Production asking for this policy.[1]

In November, 1993, Universal filed a Motion for Summary Judgment on the ground that, while it admitted Policy No. 454997P, as in effect from June, 1989 to June, 1990, provided for $10,000 in *defense* costs, it *excluded* other defense costs or coverage for damages arising from the claims set forth in the Shrewsburys' underlying suit. Universal's Motion was based on nine paragraphs, labeled as "undisputed facts" and quoted verbatim from an affidavit of a Universal employee.

The trial court initially denied the motion, as well as a motion to reconsider, "on the basis that important factual issues still exist." However, in July, 1994, in response to Universal's motion to clarify the court's denial of summary judgment, the court reversed itself and granted summary judgment. It stated that it was *not* ruling that Universal had no duty of coverage or duty to defend the Shrewsburys' suit at all. It was *solely* addressing Universal's duty under Policy No. 454997P, and *solely* as that policy was in effect from June, 1989 to June, 1990, which was the period during which the underlying suit was filed. As to that policy, however, the trial court said that "[Universal]'s obligation under that specific policy is limited to providing a defense up to the limit of the thousand dollars ($10,000.00) in defense costs, and that Plaintiff has no obligation thereunder to pay any damages that may hereafter be assessed."

## II. *Standard of Review*

◼ A claimant seeking summary judgment must establish that there is no genuine dispute as to those material facts upon which the claimant would have had the burden of persuasion at trial. In addition, a claimant moving for summary judgment in the face of an affirmative defense must also establish that the affirmative defense fails as a matter of law. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993).

◼ Only after the movant has made the required showing that no genuine issue of material fact exists does the duty arise for the non-movant to show, by affidavit, deposition, or otherwise, that one or more genuine issues are in dispute. *ITT*, 854 S.W.2d at 381–82. A genuine issue exists if there is a dispute that is real, not merely argumentative, imaginary or frivolous. The mere existence of slight doubt, or of an immaterial or frivolous dispute, will not defeat summary judgment. *Id.*

Universal argues that, because the Dealership's response to the motion for summary judgment failed to controvert any of the "undisputed" facts quoted in its motion from its supporting affidavit, these "undisputed facts" must be taken as true and that they entitle Universal to summary judgment. Among the "facts" by which the Dealership was allegedly bound are the following:

4. The Declaration Sheet of policy # 454997P at page 1E limits "legal damages" to defense costs up to Ten Thousand and 00/100 Dollars ($10,000) per suit. (See Exhibit 3, pg. 1E).

5. The providing of a defense for Dean Johnson Ford, Inc. in the underlying Shrewsbury case (*Shrewsbury v. Dean Johnson Ford, Inc.*) fulfills Universal Underwriter's obligations against a "legal damages" suit under Coverage Part 500. (See Exhibit 2, para. 6)

6. The claims by the Shrewsburys in the Second Amended Petition against Dean Johnson Ford, Inc. do not allege any damages that fall within the definition of "injury" within Policy No. 454997P. (See Exhibit 2, para. 7).

7. The claims by the Shrewsburys in the Second Amended Petition against Dean Johnson Ford, Inc. do not allege any

---

1. On December 3, 1993, Mr. and Mrs. Johnson filed a Motion for Summary Judgment or Dismissal. They noted that while they were insured under Policy No. 454997P, they were not defendants in or otherwise parties to the underlying suit and that no judgment was being sought against them personally. They further asked for sanctions for seeking declaratory judgment of no liability to them. The Johnsons were dismissed from this suit on December 7, 1993, without a ruling by the court on the Motion for Sanctions. It is unclear if the motion is still pending. If so, it may be considered by the court on remand.

damages that fall within the definition of "occurrence" within Policy No. 454997P. (See Exhibit 2, para. 8).

8. Policy No. 454997P, under Part 500, limits the obligations of Universal Underwriters to paying defense costs up to Ten Thousand and 00/100 ($10,000) for any one suit for "legal damages." (See Exhibit 2, para. 9).

■ As is evident, the above statements are not facts but legal conclusions. As such, they were not binding on plaintiffs or on the court below. *Orphant v. Orphan,* 622 S.W.2d 1, 4 (Mo.App.1981). The court below was required to determine whether any disputed issues of material fact do exist. If so, then summary judgment was improper. If not, then summary judgment was proper.

■ Our review of the grant of summary judgment is essentially *de novo.* We do not defer to the trial court's order, although the criteria we utilize in considering the propriety of summary judgment are the same as those utilized by the trial court. The record will be viewed in the light most favorable to the nonmoving party, and the latter will also be accorded the benefit of all reasonable inferences from the record. *ITT,* 854 S.W.2d at 381–82; *Carlisto v. General Motors Corp.,* 870 S.W.2d 505, 508–09 (Mo.App.1994).

■ In addition, in reviewing insurance policies, the policies will be given a reasonable construction and interpreted so as to afford coverage rather than defeat coverage. *Nixon v. Life Investors Ins. Co.,* 675 S.W.2d 676, 679 (Mo.App.1984). Unambiguous language of an insurance contract is enforceable but, if the language is ambiguous, it will be construed against the insurance company. *Robin v. Blue Cross Hosp. Serv., Inc.,* 637 S.W.2d 695, 698 (Mo. banc 1982). In addition, policy provisions designed to cut down, restrict or limit insurance, or imposing exceptions or exemptions, will be strictly construed against the insurer. *Union Elec. Co. v. Pacific Indem. Co.,* 422 S.W.2d 87, 92 (Mo.App.1967).

Universal argues that the policy is unambiguous and, as such, the court must enforce the policy language as written in accordance with its plain meaning. We agree with the general proposition of law that unambiguous policies should be enforced but do not agree that this entitled Universal to summary judgment on all issues involving the policy in question.

### III. *The Policy Provides Defense Costs of up to $20,000*

Universal argued below and in this Court, and the trial court found, that Policy No. 454997P as in effect from June, 1989 to June, 1990 did not obligate Universal to provide coverage for the types of claims made by the Shrewsburys. Moreover, it only obligated Universal to provide defense costs for claims for "Legal Damages" and "Product Related Damages" up to the $10,000 limit set out on the Declarations Page of the policy.

■ The portion of the policy governing claims for Legal Damages and for Product Related Damages is entitled, "Unicover Coverage Part 500—Garage." It defines "Legal Damages" as:

*any suit filed* against YOU *during the Coverage Part period* (other than as a result of an OCCURRENCE or as defined in PRODUCT RELATED DAMAGES):

(a) by or on behalf of a customer arising out of GARAGE OPERATIONS because of an alleged violation of any federal, state or local odometer, truth-in-lending, truth-in-leasing, AUTO damage disclosure statute or law ... and similar local or state regulations;

(emphasis added).

We agree that the portion of the Shrewsburys' claims which alleges a violation of Missouri merchandising laws falls within the definition of "Legal Damages" under Part 500 of the policy.

■ Part 500 then provides that Universal will pay "*all defense costs actually incurred* to defend any suit asking for ... LEGAL DAMAGES when such insurance is included in the declarations" (emphasis added). The Declarations Page does include such defense costs coverage for Legal Damages, but only up to the amount of $10,000. We agree with the trial court that Universal thus was required to provide up to $10,000 in

defense costs under this provision. We believe that the trial court erred as a matter of law in holding that this was Universal's sole obligation under the policy, however.

The Shrewsburys have not limited the underlying suit to a claim of violation of merchandising laws. They also claim the Dealership is liable for negligence, breach of warranty and fraud. These claims do not constitute "Legal Damages" under the policy. Rather, they come within the definition of "Product Related Damages," which are defined in Part 500 of the policy as:

> *any suit filed against YOU during the Coverage Part period by* or on behalf of a customer *arising out of the sale,* service or repair of YOUR PRODUCT, other than as a direct result of an OCCURRENCE or as defined in LEGAL DAMAGES.

(emphasis added). An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in INJURY or POLLUTION DAMAGES during the Coverage Part period neither intended nor expected by the INSURED." As is the case with Legal Damages, the policy then states:

> *WE* will pay all defense costs actually incurred to defend any suit asking for PRODUCT RELATED DAMAGES when such insurance is included in the declarations.

(emphasis added). Again, the Declarations Page separately provides for payment of up to $10,000 in defense costs for claims of Product Related Damages. These provisions clearly obligate Universal to pay additional defense costs of up to $10,000 for defense of the Shrewsburys' "Product Related Damages" claims.

Universal further argues that its obligation to pay Legal Damages and Product Related Damages is limited by an exclusion stating that: "This insurance does not apply to: INJURY, POLLUTION DAMAGES, PRODUCT RELATED DAMAGES or LEGAL DAMAGES, if caused by any dishonest, fraudulent, intentional or criminal act committed by any INSURED." Universal alleges that this provision frees it of its duty to defend the claims that the Dealership committed fraud and violated the Missouri Mer-

chandising Act, as those claims allege dishonesty.

We disagree. As previously noted, Universal is subject to an order compelling it to inform the Dealership whether it has ever provided a defense under the policy in question to other car dealers accused of misrepresentation or fraud. Universal nonetheless has failed to provide the requested information, stating it did not keep its files in a way which made this information easy to obtain. However, Universal failed to raise this objection in its initial response to the interrogatory, offered no reasonable excuse for failure to do so and failed to file a motion for reconsideration of the trial court's order compelling it to provide such information. A motion for sanctions is pending below. The trial court would certainly be free to find that Universal's undue burden objection has been waived by failure to timely present it, *compare Welsh v. Dean Witter Reynolds Org., Inc.,* 657 S.W.2d 27, 30 (Mo.App.1983), and to assess appropriate sanctions now or, in the trial court's discretion, after granting it additional time to respond, *see* Rule 61.01.

■ In any event, we find the fraud exclusion ambiguous when considered in context. "Legal Damages" are defined as claims alleging violation of odometer laws, truth-in-leasing laws, and similar provisions. That is exactly the kind of claim made here which is alleged to constitute Legal Damages. To interpret the exclusion in the manner argued by Universal would mean that the exclusion excludes a duty to defend exactly the type of claims for which a duty of defense is provided in the Legal Damages section. This would mean that the insured received nothing for its Legal Damages premium. We will not interpret the policy in a way which renders any of its provisions a nullity. *Dent Phelps R–III Sch. Dist. v. Hartford Fire Ins. Co.,* 870 S.W.2d 915 (Mo.App.1994) (insurance contracts given reasonable construction and interpreted to afford coverage rather than defeat coverage).

■ A more reasonable interpretation, and one which gives effect to both the exclusion and the provisions for defense costs for Legal Damages and for Product Related

Damages, is that the exclusion simply excluded coverage for damages actually awarded against the insured for acts proved to be intentionally dishonest or fraudulent. At this point, the Dealership has not been proved to be dishonest or to have acted fraudulently. The Dealership is simply requesting up to $10,000 of the costs of *defense* of a *claim* that the Dealership may have acted fraudulently and up to $10,000 of the costs of *defense* of a *claim* that they may have violated the merchandising laws. In light of the rule that ambiguities will be resolved against the insurer, *Peters v. Employers Mut. Casualty Co.*, 853 S.W.2d 300 (Mo. banc 1993), we will not interpret the exclusion to deny a right to recovery of such *defense* costs.

## IV. Coverage Under Umbrella Provisions of the Policy

■■ The same Universal policy, as in effect from June, 1989 to June, 1990, provided excess coverage to the Dealership under Part 980, entitled "Umbrella." Universal claims that the Umbrella provides no coverage for the Dealership because section (s) of the Umbrella Exclusions specifically *excludes* umbrella coverage for "LEGAL DAMAGES or PRODUCT RELATED DAMAGES." We agree that this section of the Umbrella states that it excludes such damages for the period June, 1989 to June, 1990. However, it does not necessarily follow that other portions of the Umbrella provide no coverage to the Dealership.

The language of the coverage provision of the Umbrella is very broad. It states, in relevant part:

INSURING AGREEMENT—We will pay for LOSS in excess of:

(a) coverage provided in any UNDERLYING INSURANCE;

(b) coverage provided in any other insurance available to an INSURED;

(c) in the absence of (a) or (b) the retention shown in the declarations.

The Dealership claims that it may be entitled to coverage under other insurance or under earlier or later versions of Policy No. 454997P itself, including the version in effect at the time it sold the car to the Shrewsburys. We agree that such other policies and other versions of Policy No. 454997P constitute "other insurance," as that term is used in the Umbrella. We therefore must determine whether such policies apply to provide excess coverage to the Dealership.

Unfortunately, we cannot make a final determination of this issue on appeal. Universal has refused to comply with the Dealership's legitimate discovery requests for the version of this policy in effect at the time of the sale of the vehicle and at other times. Universal suggests that it was not required to produce such policies because Policy No. 454997P, as in effect from June, 1989 to June, 1990, clearly covered the suit in question, which was filed in January, 1990. However, as just noted, application of the Umbrella provision of the policy in question requires discovery of "other insurance." In addition, the fact that this policy applies to the suit does not require a conclusion that other policies do not also apply.[2] In any event, unless and until Universal produces all such policies and unless and until it can be determined that such policies do not provide coverage which would trigger Universal's ob-

---

**2.** More specifically, Universal argues that the only policy which would cover the Shrewsburys' suit is Policy No. 454997P as in effect from June, 1989 to June, 1990 because the policy issued to the Dealership is a "claims made" policy. Generally, a claims made policy covers negligent or omitted acts discovered and brought to the attention of the insurer during the policy period, regardless of when the act or omission occurred. *Continental Casualty Co. v. Maxwell*, 799 S.W.2d 882, 886 (Mo.App.1990). Universal admits that its duty to provide coverage under the Legal Damages and Product Related Damages clauses is contingent upon a "lawsuit [being] filed against the insured *during the coverage period*"

(emphasis in original). While, under Policy No. 454997P as in effect in 1990, the relevant date for determining liability may be the date suit was filed against the insured, the language of other policies provided the Dealership may differ. For instance, an earlier policy might base coverage on when the claim was made to Universal, as opposed to when suit was brought, or it might be an entirely different kind of policy. We reach no conclusion on these points, although we share the Dealership's curiosity as to why Universal refuses to produce the policy in effect at the time of the sale to the Shrewsburys. We simply note that they make summary judgment inappropriate.

ligations under the Umbrella, summary judgment is improper.

For all of these reasons, we reverse the grant of summary judgment to Universal and remand this case for proceedings consistent with this opinion. We find that the trial court erred in holding that the Dealership was entitled solely to up to $10,000 in costs of defense of claims for Legal Damages, as the Dealership was in fact also entitled to recover up to $10,000 for the costs of defense of Product Related Damages claims in the underlying suit. We further find that the trial court should withhold its determination of whether other coverage is provided under the policy until Universal produces all potentially applicable policies within its possession or control and until the court rules on the pending motions for sanctions. Nothing determined in the proceedings in this case will affect the right, if any, of the Dealership to recover under other policies or under versions of this policy other than the version in effect from June, 1989 to June, 1990.

All concur.