Patricia ARNOLD Appellant,

v.

**AMERICAN FAMILY MUTUAL INSURANCE CO., et al. Respondent.**

**No. WD 55960.**

Missouri Court of Appeals, Western District.

March 31, 1999.

Before Chief Judge PATRICIA BRECKENRIDGE, Presiding, Judge PAUL M. SPINDEN and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Plaintiff–Appellant Patricia Arnold appeals from a judgment of dismissal entered on May 22, 1998, in favor of Defendants–Respondents American Family Mutual Insurance Compa-

ny ("American Family") and American Standard Insurance Company ("American Standard") on her claim for the wrongful death of her daughter based upon an accident involving an uninsured motor vehicle in which her daughter was a passenger.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 27, 1995, Jennifer Marie Newman was a passenger in an uninsured 1985 Chevrolet Camaro owned by Macel L. Canterbury, III, and being driven by his sister, Crystal Plowick. At approximately 1:30 a.m., at the intersection of County Road 9690 and U.S. Highway 63 in Howell County, Missouri, the vehicle skidded off of a curve, striking an embankment and overturning the vehicle, ejecting all of the occupants out of the vehicle. Ms. Newman suffered extensive injuries, including a lacerated liver, which resulted in her death.

Plaintiff–Appellant Patricia Arnold is the natural mother of Jennifer Newman. Ms. Arnold brought a wrongful death action against Defendant American Family under Section 537.080,[1] The Wrongful Death Act. Upon notification that there were actually two insurance companies involved in the four insurance contracts at issue, Plaintiff filed a Second Amended Petition naming both American Family and American Standard as Defendants. After a motion to dismiss was filed by the Defendants, Plaintiff then filed a Third Amended Petition, adding the driver of the uninsured motor vehicle, Crystal Plowick, and alleging she was negligent in operating the vehicle and causing the accident which resulted in her daughter's untimely death.

Ms. Arnold sought uninsured motorist coverage totaling $225,000.00 under three policies of insurance with Defendant American Family. She also sought $25,000.00 in uninsured motorist coverage under a policy issued by Defendant American Standard. On March 30, 1998, a hearing was held in which a settlement between the driver of the unin-

sured motor vehicle, Crystal Plowick, and Plaintiff was approved by the trial court. Ms. Plowick was released from any further liability and was dismissed from the suit. Plaintiff then filed a Fourth Amended Petition against alleging that Ms. Plowick's brother, Macel Canterbury III, who owned the vehicle which Ms. Plowick was driving at the time of the accident, negligently entrusted his car to his sister on the night of the accident, knowing that she was too inebriated to drive.

On April 30, 1998, Defendants each filed motions to dismiss on the grounds that Plaintiff: 1) failed to state a claim because she was barred from maintaining a breach of contract action under Section 537.080; 2) was not the real party in interest and lacked standing to maintain the action; 3) failed to comply with the terms and conditions of the insurance policies; 4) failed to name a necessary and indispensable party by not naming the owner of the vehicle; 5) released Ms. Plowick without the Defendants' consent in violation of the insurance policies; and 6) was not entitled to coverage because the vehicle was not "uninsured."

At the hearing on the motion to dismiss, Plaintiff objected on the basis that factual matters outside the pleadings were argued by each of the Defendants in their motions to dismiss and the procedural rules relating to the presentation of motions for summary judgment had not been met, requiring the motions to be overruled. On May 22, 1998, the trial court sustained Defendants' motions to dismiss, and it is this dismissal from which Plaintiff now appeals.

## II. STANDARD OF REVIEW

The trial court granted both Defendants' motions to dismiss without specifying the reasons for its ruling. Ms. Arnold notes that many of the arguments raised in the motions to dismiss actually depended on evidence rather than the pleadings, and hence did not provide a basis for granting a motion to

---

1. All statutory references are to RSMo 1994 unless otherwise indicated. Section 537.080 provides, in relevant part, "Whenever the death of a person results from any act ... the person or party who ... would have been liable ... shall

be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for: (1) ... by the father or mother of the deceased ..."

dismiss. Defendants counter that many of the grounds alleged were based solely on the pleadings and those grounds fully support the trial court's grant of the motions to dismiss. They further assert that, to the extent their motions relied on matters outside the pleadings, their motions should be treated as motions for summary judgment pursuant to Rule 55.27(b), which states in relevant part:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 74.04.

As is evident, Rule 55.27(b) permits treatment of a motion to dismiss as if it were one for summary judgment only if the evidence outside the record is presented to and not excluded by the trial court, and only if the other parties are given an opportunity to present opposing materials which those parties contend raise a genuine issue of material fact. In addition, in circumstances such as this, the parties are entitled to notice that the court will be treating the motion as one for summary judgment. *Baker v. Biancavilla*, 961 S.W.2d 123, 125 (Mo.App.1998); *Johnson v. Raban*, 702 S.W.2d 134, 136 (Mo. App.1985).

Here, the court's order does not state that it is granting summary judgment, but rather that it is granting the Defendants' motions to dismiss, and the trial court did not give any notice to the parties that it was converting the motions to dismiss into motions for summary judgment. Moreover, counsel for Ms. Arnold objected at trial to treating the motions as motions for summary judgment, noting that the requirements for a summary judgment motion had not been met, that Defendants had failed to attach to their pleadings or file with the court the insurance policies at issue or other supporting documents necessary for consideration of many of their arguments, and that Ms. Arnold had not been given sufficient time to obtain and file documents which would refute the

grounds for summary judgment alleged by Defendants.

We agree with Ms. Arnold that it would have been improper for the trial court to have considered the grounds set out in Defendants' motions to the extent that they relied on facts outside the pleadings, because she had not been given sufficient time to obtain opposing evidence showing a genuine issue of material fact existed on these matters. We further agree that, even had the trial court considered the motions as motions for summary judgment, because defendants failed to attach the insurance policies at issue to their motions, the trial court would have erred in granting the motions based on Plaintiff's alleged failure to comply with certain provisions of those policies. Here, however, it is evident from the court's judgment that it did not consider the motions as motions for summary judgment, but, rather, as motions to dismiss, and that her ruling was based on a determination that Plaintiff had failed to state a claim on which relief could be granted. We therefore will limit our review to a determination as to whether Plaintiff has stated a claim on which relief could be granted, except to the extent that the other issues raised deal with questions of law which are likely to arise again on remand.

When reviewing the trial court's grant of a motion to dismiss, we look to determine if the facts as pleaded and the reasonable inferences drawn therefrom state any ground for relief. *Brandin v. Brandin*, 918 S.W.2d 835, 837 (Mo.App.1996), *citing Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). "In assessing the sufficiency of a petition, we accept all properly pleaded facts as true, give them a liberal construction, and draw all reasonable inferences which are fairly deducible from the pleaded facts." *Thomas v. Evans*, 941 S.W.2d 872, 873 (Mo.App.1997), *citing Murphy v. A.A. Mathews*, 841 S.W.2d 671, 672 (Mo. banc 1992). Where, as here, the trial court does not state a basis for its dismissal, we presume that dismissal was based on the grounds stated in the motion to dismiss and will affirm if dismissal was appropriate on any ground supported by the motion to dismiss. *Shaver v. Shaver*, 913 S.W.2d 443, 444 (Mo.App.1996).

## III. UNINSURED MOTORIST COVERAGE APPLIES TO THE NEGLIGENT ENTRUSTMENT CLAIM AGAINST MR. CANTERBURY

The issue for our determination is whether Defendant insurers were required to provide uninsured motorist coverage for Plaintiff's claims against Marcel Canterbury III for his negligent entrustment of his vehicle to his sister. That determination begins with a review of Section 379.203 itself, which provides, in relevant part:

No automobile liability insurance . . . shall be delivered . . . in this state . . . unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. . . .

§ 379.203; *Heafner v. Safeco Nat'l Ins. Co.*, 613 S.W.2d 478, 479 (Mo.App.1981). The purpose behind this section, "is to afford the same protection to a party injured by an uninsured motorist as would be available if the offending vehicle was covered by a standard liability insurance policy . . ." *Hendrickson v. Cumpton*, 632 S.W.2d 512, 515 (Mo. App.1982). The Supreme Court has also noted that the purpose of Section 379.203 is to protect an insured from, "an owner or operator of [an] uninsured motor vehicle" and that the "focus is on *the uninsured vehicle* and not on whether the owner or operator is an 'uninsured motorist' under the circumstances of an accident." *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 143 (Mo. banc 1980).

Defendants argue that the 1985 Chevrolet Camaro was not an "uninsured motor vehicle" as that term is used in Section 379.203 because Ms. Plowick, its operator, did have personal liability coverage under her parents' policy which provided coverage for her negligent operation of the vehicle, and Plaintiff settled with Ms. Plowick for the limits of that policy. In so arguing, however, they ignore the fact that the only claim remaining at issue is Plaintiff's claim against the owner of the vehicle, Mr. Canterbury, for his negligent entrustment of his vehicle to Ms. Plowick. According to the allegations of the Petition, Mr. Canterbury allowed Ms. Plowick, who was not of the legal age to consume alcohol, to drive his vehicle after she was intoxicated, knowing she had been drinking alcohol which he had provided to her, and that she was in no condition to drive. This provides the basis for Plaintiff's assertion of a claim against him for negligent entrustment of the vehicle to Ms. Plowick, for:

The general rule is that an owner of an automobile is under a duty not to place the automobile in the hands of a person whom he knows, or in the exercise of reasonable diligence could have known, to be an incompetent, careless, reckless, or inexperienced driver. Any violation of this duty is negligence, which becomes actionable when the borrower, through negligent operation of said car, injures another. The injury in such a case is said to be the proximate result of the combined negligence of the owner and driver, making said parties joint tort-feasors.

*Whitehead v. Weir*, 862 S.W.2d 507, 508 (Mo. App.1993).

At least two Missouri cases have held that there is uninsured motorist coverage for negligent entrustment on facts which are identical in relevant respects to the facts of this case. In *Heafner*, as here, plaintiffs averred that the owner of the automobile was liable for its negligent use, and the owner had no liability insurance applicable to this use. Despite the fact that there was personal liability insurance for the operator of the vehicle, the court held that the *automobile* was "uninsured" and the uninsured motorist coverage applied in favor of the policyholder. The Court relied on language from the Supreme Court in *Harrison v. M.F.A. Mut. Ins. Co.*, 607 S.W.2d 137 (Mo. banc 1980), in which the Court stated that the "uninsured motor vehicle" statute was not an "uninsured motorist" statute. Based on this language, *Heafner* concluded that because the defendant owned the automobile, and carried no insurance as protection against his negligence acts concerning such ownership, there existed no automobile liability insurance policy which insured the vehicle for purposes of providing coverage for the negligent entrustment claim. *Id.* at 480.

Similarly, in *Hendrickson*, we stated that, "following the *Heafner* rule, we now hold that the personal liability insurance for the negligence of an operator of a motor vehicle does not foreclose the availability of the uninsured motor vehicle coverage for the owner's negligent entrustment of his automobile." 632 S.W.2d at 515.[2]

Defendants argue the reasoning of these cases is in conflict with *Harrison's* statement that, "uninsured motor vehicle" as used within the statutory scheme, "refers to a vehicle whose operator or owner did not have in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident." *Harrison*, 607 S.W.2d at 144. Defendants conclude from this that the 1985 Chevrolet Camaro was not an "uninsured motor vehicle" because Ms. Plowick, its operator, did have personal coverage, through her parents, for her negligent operation of the vehicle, and therefore there was operator coverage.

█ We do not find that *Harrison* governs here, for Plaintiff is not seeking to recover for Ms. Plowick's negligent operation of the vehicle. Here, the claim is for negligent entrustment of the vehicle to her by the owner. The owner, Mr. Canterbury, has no coverage for this act (nor, of course, did the operator). *Heafner* and *Hendrickson* teach us that, in a situation such as this, where the owner is sued for his own separate negligence in entrusting the vehicle to another, and there is no coverage for this act, then the uninsured motorist provisions of the injured person's policy apply and coverage will be required if the other requirements for coverage are met. We therefore turn to the issue whether Defendants were entitled to judgment on the pleadings based on the other grounds asserted by Defendants.

## IV. PLAINTIFF IS THE REAL PARTY IN INTEREST

█ Defendant also moved to dismiss below on the basis that this is a breach of contract action on their insurance policies, and as such, the action must be brought against them by the administrator of the decedent's estate, not by Plaintiff, who has sued in her capacity as the decedent's mother. They thus assert that Plaintiff is not the real party in interest and lacks standing to maintain this action in her present capacity.

We disagree. In *Sterns v. MFA Mut. Ins. Co.*, 401 S.W.2d 510 (Mo.App.1966), defendant similarly argued that the parents' petition for the wrongful death of their child did not set forth a claim for which relief could be granted, "primarily on the ground that the uninsured motorist clause . . ., or (coverage E) was not intended to and does not afford indemnity to any surviving husband, wife, minor child or children, or surviving parent or parents (as named in V.A.M.S,. Sec. 537.080) for damages resulting from wrongful death of an insured caused by an uninsured motorist, or entitle any one of those named persons to maintain suit on the policy." *Id.* at 513. The defendant insisted that the term legal representative, as used in the insurance policy, could be interpreted only in its strict legal sense — that is, as "administrator" or "executor." After reviewing the policy behind the uninsured motorist statute, the court held:

> In accordance with all the foregoing authority we will perform our duty to select and apply a meaning of "legal representative" that would be fair and reasonable, and consistent with the entire context of the language in which the words are employed, and that would effectuate the purpose of Coverage E rather than defeat it. We will not resolve the question by construing ambiguous, technical language in favor of the insurer who wrote the policy, and in so doing, nullify its clearly apparent intendment. We have heretofore stated that the intended purposes of uninsured motorist insurance, such as is provided by Coverage E, include indemnification of survivors and dependents of insureds who suffer bodily injury resulting in death by

---

**2.** In *Whitehead v. Weir,* this Court faced a similar situation in which the vehicle was insured for the operator's negligent operation of it, but there was no insurance covering the claim that the owner had negligently entrusted the vehicle to the operator. This Court therefore held that the vehicle was uninsured as to the negligent entrustment claim under the language of the policy in question. 862 S.W.2d 507.

the fault of uninsured motorists. We uphold that purpose by declaring that the term "legal representative" used in the policy, as it applies to a person or persons claiming damages for a wrongful death, includes all persons who may have the right to bring an action under V.A.M.S., Sec. 537.080, and that its meaning is not restricted to an administrator or executor.

*Id.* at 519.

*Cobb v. State Security Ins. Co.*, 576 S.W.2d 726 (Mo. banc 1979), followed *Sterns* in a case involving a mother and father who brought an action against the father's insurer to recover uninsured motorist coverage for the death of their daughter. Relying on *Sterns*, it held:

It is clear that Norma, as the mother of Rhonda, has a claim for wrongful death under *Marshall [v.* Wabash R. Co., 120 Mo. 275, 25 S.W. 179 (1894)] and *Glona [v. American Guarantee & Liability Insurance Co.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968)], supra, and hence is a "legal representative" within the terms of the uninsured motorist coverage under the authority of *Sterns.* Norma is a person who has a right of action under the wrongful death act and hence is included within the term "legal representative" to recover damages under Part IV of the policy for the death of Rhonda.

*Id.* at 737. Here, as in *Cobb* and *Sterns,* Plaintiff is the mother of the deceased and thus has the right to bring the suit as her legal representative within the terms of the uninsured motorist coverage. Based on the reasoning of these two cases, we find that the Plaintiff did have standing to maintain the current action.

## V. COMPLIANCE WITH CONTRACTUAL PROVISIONS

■ Defendants also argued below that the trial court should dismiss Plaintiff's Petition because she failed to plead compliance with all contractual obligations under the applicable policies of insurance. As Plaintiff notes, however, she did generally plead in her Petition that she had complied with all contractual provisions of her insurance policies. While she did not specifically set out

what the contract obligations were or how she had complied with them, Defendants cite us to no authority which requires this degree of specificity in pleading in order to survive a motion to dismiss. And, in fact, we note that Rule 55.16 specifically states:

In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.

Plaintiff's general averments appear adequate under this rule. Moreover, any deficiencies should not form the basis of a dismissal without an opportunity to replead. *Basore v. Allstate Ins. Co.*, 374 S.W.2d 626 (Mo.App.1963). Finally, we note that, "Rule 55.27(d) provides that a party may move for a more definite statement of any matter contained in a pleading which is not averred with sufficient particularity to enable the party to prepare a responsive pleading." *Glidewell v. S.C. Management, Inc.*, 923 S.W.2d 940, 952 (Mo.App.1996). "Failure to move for a more definite statement under Rule 55.27(d) waives deficiencies in matters of particularity." *Layton v. Pendleton*, 864 S.W.2d 937, 941 (Mo.App.1993). In the absence of a motion to make more definite and certain, we therefore hold that Plaintiff's allegation was minimally sufficient to meet the requirements of the rule that Plaintiff plead compliance with contractual prerequisites to coverage or show sufficient excuse for noncompliance. *See Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7 (Mo. banc 1995).

Defendants further assert that Plaintiff did not, in fact, comply with the policy provision requiring her to join the uninsured owner of the vehicle, Mr. Canterbury, in any lawsuit she filed against her insurer for uninsured motorist coverage for his negligence. Plaintiff denies that the policy did require her to sue Mr. Canterbury as a prerequisite to suit.

We are unable to finally resolve this issue, which is in any event a factual one not proper for determination on a motion to dismiss, for copies of the insurance policies in question are not in the record on appeal and were not

even filed with the trial court. In the absence of copies of the policies, we cannot determine with certainty exactly what the policy did require. For this reason, it would have been improper for the trial court to have granted the motions to dismiss, or a motion for summary judgment, based on failure to comply with this provision, and we cannot affirm on this ground.

Because the issue of failure to comply with this policy provision will arise on remand, however, we briefly address that issue. Defendants assert that the policies state that "the owner or operator of the uninsured motor vehicle must be made a defendant." They claim that this provision gave them the right to require Plaintiff to join both the owner, Mr. Canterbury, and the operator, Ms. Plowick, as defendants. Plaintiff counters that, because the policy uses the word "or" rather than "and," the provision can also be reasonably interpreted to permit the insurer to require joinder only of one, and not both, the owner and the operator. She did, in fact, join the operator of the motor vehicle, Ms. Plowick, as a defendant, at the time the suit involved the operator's negligence, and she argues that nothing in the complaint required her to also join the owner, Mr. Canterbury, in the suit. In determining this issue on remand, the court should be guided by the principle that, where there is more than one reasonable way of interpreting a policy, this creates an ambiguity which will be resolved in favor of the insured.[3] *Harrison v. Tomes*, 956 S.W.2d 268, 270 (Mo. banc 1997); *Universal Underwriters Ins. v. D. Johnson*, 905 S.W.2d 529, 533 (Mo.App.1995).

Defendants also argued below that they were entitled to judgment because Plaintiff violated the "consent exclusion" clause of their policy. Defendants assert that this provision stated that an insured is not entitled to coverage if the insured settles with the tortfeasor without the written consent of the insurer, and that they did not consent to Plaintiff's $100,000.00 settlement with Ms. Plowick.

Again, since Defendants failed to include a copy of the insurance policies in the record here or in the trial court, this could not have provided a proper basis for granting of the motion to dismiss below, or even for granting a motion for summary judgment.[4] But, again, assuming that, on remand, the policies are filed and they do provide as alleged, we will briefly provide guidance on consideration of that issue.

Plaintiff asserts that she did have the insurers' consent to settle and that the insurers are estopped to deny that consent. In support, she states that, on remand, she will be able to produce a letter from counsel for the insurers, addressed to Ms. Plowick, and demanding that she settle for the $100,000 policy limits for which she ultimately did settle with Plaintiff. In addition, counsel for the insurers had notice of the hearing at which the court approved the settlement, and attended that hearing through counsel, yet did not object to the settlement. These facts, if proven, should be considered below in determining whether the conduct of Defendants is equivalent to a written consent to the settlement or whether, in these circumstances, they would be estopped to claim otherwise. *Cf. Miles v. Iowa Nat. Mut. Ins. Co.*, 690 S.W.2d 138, 143 (Mo.App.1984) (holding an insurer may not, "neglect to object to a defective proof of loss until plaintiff's case comes to trial long after the period for submission of the proofs has expired and then deny liability on some other ground."); *Farley v. St. Charles Ins. Agency, Inc.*, 807 S.W.2d 168, 170 (Mo.App.1991) (holding an insurer's prior conduct may preclude the insurer from denying coverage); *Oates v. Safeco Ins. Co.*, 583 S.W.2d 713, 719 (Mo. banc 1979) (recognizing among the numerous new problems created by uninsured motorist in-

---

3. The cases on which Defendants rely in arguing for a contrary result dealt with very different policy language and hence are not dispositive.

4. Because of our resolution of this issue, we do not address Plaintiff's additional arguments that

consent clauses are void as against public policy under the reasoning of *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716 (Mo.App.1978), and *Lebs v. State Farm Mut. Auto. Ins. Co.*, 568 S.W.2d 592 (Mo.App.1978).

surance coverage is the conflict of interest situation arising where the uninsured motorist asserts a counterclaim).

For all of these reasons, we reverse the grant of the motions to dismiss and remand for further proceedings consistent with this opinion.

Chief Judge PATRICIA BRECKENRIDGE, Presiding, and Judge PAUL M. SPINDEN, concur.