Ronald L. **WOOSLEY,**
Plaintiff-Appellant,

v.

**STATE AUTOMOBILE MUTUAL INSURANCE CO.,**
Defendant-Respondent.

No. 41525.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 27, 1980.

---

Mark I. Bronson, St. Louis, for plaintiff-appellant.

Robert A. Wulff, St. Louis, for defendant-respondent.

DOWD, Presiding Judge.

Appellant sued respondent upon the uninsured motorist provision of appellant's automobile liability insurance policy with respondent. Appellant's suit was based upon a vehicular collision with Ronald Kitchen on September 19, 1972. The trial court granted respondent a directed verdict at the close of appellant's evidence.

Appellant contends the trial court erred in directing an adverse judgment because appellant's evidence did make a submissible case of Kitchen's negligence grounded upon appellant's pleaded theories of excessive speed, failure to keep a careful lookout, to yield the right of way, to slacken speed, to swerve, to sound a signal or warning, or to stop and humanitarian negligence in failing to stop, swerve, slacken speed, or sound a warning.

■ Appellant did not file a post-trial motion in the lower court, and his appellate allegations of error are, therefore, not preserved. *O'Brien v. Sun Life Assur. Co.*, 589 S.W.2d 629, 631[3] (Mo.App.1979); *McMahon v. Charles Schulze, Inc.*, 483 S.W.2d 666, 667–68[2] (Mo.App.1972). Appellant did, however, seek review under the plain error doctrine during oral argument. If appellant made a submissible case, the trial court's direction of a verdict against appellant would constitute a plain error affecting substantial rights and a manifest injustice. *Williams v. Southern Pacific R. R.*, 338 S.W.2d 882, 883–84[3–4] Mo.; *McMahon v. Charles Schulze, Inc., supra*; Rule 84.13(c). We therefore turn to the evidence to determine whether appellant made a submissible case.

The collision at issue occurred at the intersection of Holman Road, which runs generally north/south and Highway 24, which runs generally east/west in Moberly. Holman Road ends at Highway 24 and forms a "Y" type intersection. A stop sign for traffic on the left fork of Holman Road is on the island between the left and right forks of Holman Road. As it travels toward the intersection to the east, Highway 24 is on a slight downgrade and has no traffic signal or sign at Holman Road. Highway 24 curves gradually and slopingly to the left as it travels east toward and past Holman Road. One witness described Highway 24 as a banked curve where it intersects with Holman Road. Holman Road joins Highway 24 level with Highway 24 where the two roads intersect. According to some of the witnesses, the driver of a vehicle stopped at Highway 24 on Holman Road has an unobstructed view 250 to 300 feet, perhaps more, to the left to the crest of the

slight incline. Highway 24 has shoulders of 6 to 8 feet.

At trial, appellant testified he was driving north on Holman Road and stopped at the stop sign in preparation to turn onto Highway 24 but could not see because of debris, limbs, and little bushes on both sides of Holman Road. He drove slowly forward to the edge of Highway 24 and stopped where he could see both directions. When he looked to his left, appellant saw an approaching, east-bound vehicle at a distance of approximately 600 feet. Appellant saw no other east-bound vehicles and was unable to estimate the speed of the vehicle he saw, but it appeared to be driving normal speed. He did not notice whether the east-bound vehicle was an automobile or a truck. Appellant then looked to his right and saw nothing. Appellant proceeded to turn left onto west-bound Highway 24 at a gradual pace. He estimated he was stopped at the edge of the roadway for one second before beginning his turn. As he made his turn and as appellant's front wheels crossed the center of the highway appellant looked sharply to his left when he heard "squeeling tires sliding or something" and saw Kitchen's vehicle 5 to 10 feet away from appellant's vehicle, headed "straight to the driver's door of my car." Appellant estimated 5 to 10 seconds had passed between the time he left the edge of the roadway and saw Kitchen's vehicle. Appellant remembers nothing more of the accident. He does not remember the impact.

During cross-examination appellant was questioned about a portion of appellant's deposition in which appellant stated that when he looked to his left before beginning his turn, he saw "a car, at the top, about six hundred feet." [1]

Ronald Kitchen's deposition was read at trial. Kitchen testified he was going east on Highway 24 at approximately 25 or 30 miles per hour in his pick-up truck when he collided with appellant's automobile as it drove off Holman Road onto Highway 24 from Kitchen's right. Although Highway 24 has a banked curve for approximately 100 feet as it approaches Holman Road from the west, no hill crest obstructs the view. Kitchen did not see appellant's automobile stop at the stop sign for Holman Road. Kitchen first saw appellant's vehicle at the edge of the highway. Appellant's automobile was moving and about 2 or 3 car-lengths away from Kitchen. A pick-up truck was approaching from Holman Road from the east on Highway 24. Appellant's vehicle accelerated onto the highway in front of Kitchen's lane of traffic at about 25 to 30 miles per hour some 2 to 3, perhaps 4 car-lengths ahead of Kitchen. Kitchen hit his brakes which took hold, but did not remember whether he took other evasive action. The left front fender of Kitchen's truck hit the left fender of appellant's automobile when the vehicles were in Kitchen's lane. Both vehicles spun around somewhat and Kitchen's truck came to rest crossways in the center of the highway, facing north. Appellant's vehicle came to rest in the west-bound lane, facing west.

The deposition of a witness to the accident, Elmer Sullivan, was also read into evidence at trial. The witness had been driving west on Highway 24 and was 50 feet away from the intersection when he first saw appellant's automobile approaching Highway 24 on Holman Road from the south, also about 50 feet from the intersection. Kitchen's east-bound pick-up truck was 45 to 50 feet from the intersection at that time. Appellant was "coming pretty fast to stop", did not pause or stop, but "shot right on out" onto Highway 24. Sullivan estimated both appellant's and Kitchen's speeds at 35 to 40 miles per hour. The truck was at most 10 to 20 feet from the point of impact when the automobile pulled on Highway 24. Sullivan stopped his vehicle when he realized appellant and Kitchen

1. On appeal, respondent points to this deposition evidence to argue appellant's evidence does not show the vehicle which appellant saw 600 feet to his left on Highway 24 when appellant was stopped before turning from Holman Road was Kitchen's pick-up truck. We cannot agree. The context of appellant's statement would as easily lend the statement to the interpretation appellant used the term "car" to refer to any vehicle whether automobile or truck.

were going to collide. The accident occurred a few seconds later. The left front fender of the pick-up truck and left front wheel of the automobile were the parts of the vehicles which collided. The vehicles impacted while in the east-bound lane of Highway 24, and the automobile came to rest facing northwest in the west-bound lane while the truck came to rest in the east-bound lane. Sullivan did not see Kitchen swerve, brake, slow or sound his horn and did not know whether Kitchen's turn signal was lit. Sullivan did hear screeching tires. Sullivan did not see anything at the southwest corner of the intersection which would obstruct the vision of drivers looking west from Holman Road. Sullivan opined that Kitchen did not have time to avoid the accident when appellant did not stop before entering Highway 24.

The police officer investigating the accident provided the further information that he found the automobile in the west-bound lane facing southwest and the truck in the east-bound lane facing northeast. The truck left 56 feet of skidmarks leading to the rear wheels of the truck. The automobile left 20 feet of skidmarks leading to the probable point of impact.

An engineer gave expert testimony that a vehicle skidding on a slightly downgraded, dry, polished concrete road could stop in 64 feet after 2.71 seconds at 25 miles per hour, in 85 feet after 3.11 seconds at 30 miles per hour, in 109 feet after 3.50 seconds at 35 miles per hour, and in 136 feet after 3.89 seconds at 40 miles per hour. Vehicles travel 36.7 feet per second at 25 miles per hour, 51.9 feet per second at 35 miles per hour, 58.7 feet per second at 40 miles per hour, and almost 7½ feet per second at 5 miles per hour. The expert opined that Kitchen's reaction began 95 feet before the point of impact.

In reviewing the trial court's direction of a verdict at the close of plaintiff's evidence, the evidence must be viewed in the light most favorable to plaintiff, giving plaintiff the benefit of all reasonable, favorable inferences to determine whether a submissible case was made. *Langton v.* *Brown*, 591 S.W.2d 84, 86[1] (Mo.App.1979). An issue should be submitted to the jury if there is any evidence which would justify recovery. *Sands v. R. G. McKelvey Bldg. Co.*, 571 S.W.2d 726, 733 (Mo.App.1978). If reasonable minds can draw different conclusions from the facts, the questions of negligence and causation are for the jury and a directed verdict is not proper. *Baker v. Brinker*, 585 S.W.2d 256, 259[6] (Mo.App. 1979).

In the instant case, evidence by witness Sullivan placed Sullivan's, Kitchen's and appellant's vehicles equi-distant from the point of impact when Sullivan first saw all the vehicles. The evidence does not categorically indicate Kitchen could not have seen appellant at that time in the exercise of a careful lookout. Sullivan was able to stop his vehicle before colliding with any other when he realized appellant was going to proceed onto Highway 24. Although a jury could find against appellant, we do not believe the appellant's evidence so defective as to justify the drastic recourse to directed verdict. *Boyle v. Colonial Life Ins. Co. of America*, 525 S.W.2d 811, 814 (Mo.App. 1975). The jury should have been permitted to determine, upon the conflicting evidence and inferences, whether and when Kitchen had the opportunity to avoid the accident. *Carlson v. St. Louis Public Serv. Co.*, 358 S.W.2d 795 (Mo.1962); *Colby v. National General Ins. Co.*, 490 S.W.2d 323 (Mo.App.1973). *See, Williams v. M. C. Slater, Inc.*, 590 S.W.2d 357 (Mo.App.1979); *Tuchschmidt v. Canavan*, 588 S.W.2d 33 (Mo.App.1979); *Hill v. Barton*, 579 S.W.2d 121, 131–32 (Mo.App.1979).

We also believe the respondent was not entitled to a directed verdict upon the issue whether Kitchen was an uninsured motorist. The evidence of Kitchen's status was conflicting. Although Kitchen believed himself insured, maintained he had paid premiums every six months, and had at least some dealings of somewhat unclear nature with his purported insurer through his purported insurance agent or broker, Kitchen did not possess a copy of an insurance policy or any type of receipt indicating

he had any automobile liability insurance for the period in which the accident occurred. Again, though the jury could find against appellant upon the question whether Kitchen was an uninsured motorist, we do not believe the evidence so defective as to take the case from the jury.

The judgment is reversed and remanded for new trial.

REINHARD and CRIST, JJ., concur.