Andrew D. WALDROP, Appellant,

v.

SHELTER MUTUAL INSURANCE
COMPANY, Respondent.

No. WD 65518.

Missouri Court of Appeals,
Western District.

April 18, 2006.

Herbert W. McIntosh, Kansas City, MO, for appellant.

William A. Mallory, Kate E. McKinney, Co-Counsel, Kansas City, MO, for respondent.

Before LOWENSTEIN, P.J., ELLIS and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

This is a suit to enforce a settlement agreement. Andrew Waldrop, the injured plaintiff (hereinafter "Appellant"), was a passenger in a car insured by respondent Shelter Mutual Insurance Company ("Shelter"), which was forced off the road by a vehicle that left the scene. Appellant and Shelter agreed to settle for the policy limits of $25,000. The issue at the heart of the case is whether Shelter was then entitled to a provision in the release that subrogates it to any amount Appellant may also receive in uninsured coverage from his insurance company. Following motions from both sides, Shelter was granted summary judgment. This court reverses the trial court's judgment granting Shelter summary judgment and remands with instructions to order payment of $25,000 to Appellant.

## FACTS

On September 12, 2002, Appellant was a passenger in a vehicle operated by Danny Barnes when another vehicle crossed the centerline, forcing Barnes's vehicle to a ditch. The driver of the oncoming vehicle left the scene without stopping. As a result of the accident, Appellant sustained a permanent spinal injury. Barnes was insured by a policy issued by Shelter at the time of the accident, which had uninsured motorist coverage in the amount of $25,000. There is no contention here that Barnes was negligent.

On November 12, 2003, Appellant made a written demand to Shelter to settle his claim against Barnes in exchange for the payment of the policy limits. On November 18, 2003, Shelter's adjuster Marcks faxed a letter, stating "[t]he available Uninsured Motorist policy limit is $25,000.00. We would like to offer this amount in settlement of [Appellant's] injury claim. Please contact me at your earliest convenience to discuss settlement of [Appellant's] injury claim." The cover letter accompanying Marcks' fax instructed in relevant part, "call [Marcks] at your earliest convenience to complete the paperwork to settle this Uninsured Motorist claim." That same day, Appellant's counsel telephoned Marcks and accepted Shelter's $25,000.00 offer of settlement. Also on that same day, Marcks faxed a Receipt and Trust Agreement (Agreement) to Appellant's attorney. The Agreement stated in relevant part:

In consideration of the payment of the [$25,000.00] by Shelter Mutual Insurance Co. Company . . .:

(1) Hereby releases and forever discharges [Shelter] from any and all liability whatsoever to the undersigned under the Uninsured Motorist provisions of the . . . policy . . . for bodily injury, sickness, or disease arising out of the . . . accident.

(2) Agrees to hold for the benefit of [Shelter] all rights, claims and causes of action which [Appellant] has or may

have against anyone other than [Shelter] for such bodily injury, sickness or disease.

(3) Agrees to take, through any representative designated by the [Shelter], such action in the name of [Appellant] as may be necessary or appropriate to recover damages for such injuries, sickness or disease, the [Shelter] to pay all costs and expenses in connection therewith.

(4) Agrees that any money so recovered by [Appellant] for such injuries, sickness or disease, whether by settlement or otherwise, not in excess of the above amount, plus expenses, costs and attorney's fees incurred by [Shelter] in connection with such recovery, shall be held in trust by [Appellant] and paid to the [Shelter] upon demand.

(5) Represents to [Shelter] that [Appellant] has not released anyone other than [Shelter] from any rights, claims or causes of action which [Appellant] may have to recover damages for such injuries, sickness or disease, and that [Appellant] has received no payment from anyone other than [Shelter] as damages, compensation or otherwise, for such injuries, sickness or disease.

On November 19, 2003, Appellant's attorney returned the Agreement unsigned after adding the following language to paragraph (2) above: "[e]xcept for any uninsured claim that may be made against American Family Insurance Company." American Family Insurance Company is Appellant's personal insurance company. Adjuster Marcks informed Appellant's attorney that Shelter would not accept the altered Agreement. Appellant

filed suit against Shelter to enforce the settlement agreement. Each party filed a motion for summary judgment. The trial court granted Shelter's motion for summary judgment and denied Appellant's.[1]

## STANDARD OF REVIEW

■ This court reviews the propriety of the trial court's judgment granting Shelter's motion, *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate if no genuine issue of material facts exists and the moving party has a right to judgment as a matter of law. *Id.; Liberty Mut. Ins. Co. v. Havner*, 103 S.W.3d 829, 831 (Mo.App.2003). The record is read in the light most favorable to the party against whom summary judgment was granted, and all the facts properly pled by the nonmoving party and all inferences therefrom are assumed as true. *Liberty Mut.*, 103 S.W.3d at 831–32. Reversal of a grant of summary judgment is required if either (1) there is a genuine issue as to a material fact, or (2) the trial court erred as a matter of law. *Id.* at 832. The only issue here is whether the trial court erred in applying the law.

## ANALYSIS

■ Appellant argues the trial court erred by granting Shelter's motion for summary judgment because (1) Appellant and Shelter entered into an enforceable agreement, (2) the contract was definite, unambiguous, and complete in its terms, (3) Adjuster Marcks' affidavit (stating that he expected and believed that no funds would be exchanged until Appellant exe-

---

1. Appellant states the trial court erred in denying Appellant's motion for summary judgment and in granting Shelter's motion for summary judgment. This court notes that a denial of a summary judgment is generally

not appealable. *Chouteau Auto Mart, Inc. v. First Bank of Mo.*, 148 S.W.3d 17, 28 (Mo. App.2004). Therefore, this court only reviews the trial court's granting of Shelter's motion for summary judgment.

cuted the Agreement) was inadmissible as parol evidence, and (4) the Shelter could not as a matter of law require Appellant to execute the Agreement as a condition of payment under the case of *Schaeffer v. American Motorists Insurance Co.,* 973 S.W.2d 180 (Mo.App.1998).[2]

■ A settlement agreement is a type of contract. *Vulgamott v. Perry,* 154 S.W.3d 382, 387 (Mo.App.2004). Appellant first contends an enforceable agreement was reached between the parties. This facts of this case are similar to the case of *Schaeffer* in which the court began its analysis by stating an executory contract was formed between the parties, despite, as here, the parties' disagreement regarding the language of the subrogation provision, the plaintiffs' refusal to sign the release, and the fact that the settlement money was not paid. 973 S.W.2d at 181–82. This court similarly concludes Appellant and Shelter entered into an executory contract.[3]

■ Shelter's argument that the parties' lacked a meeting of the minds originates from the parties' disagreement over a subrogation provision in Shelter's release that, as discussed *infra,* contravenes Missouri law. It is self-evident, therefore, that Shelter should not be able to use this provision to argue that a meeting of the minds did not occur as to the essential terms of the contract. A contract will be valid and enforceable despite the fact that some terms may be missing as long as the essential terms are sufficiently definite to enable the court to give them exact meaning. *See* Restatement (Second) of Contracts § 33 cmt. a. (1981) ("Where the parties have intended to con-

clude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract."). Without determining whether the subrogation provision is an essential term to this contract, the insurer's subrogation rights are already provided for in section § 379.203.4, RSMo 2000.

■ This court now turns to the issue of the validity of the subrogation provision at issue. The settlement document sent by Shelter is in the form of a "Trust Agreement." This mode is utilized to effectuate the subrogation rights afforded an insurer under section 379.203.4 that pays uninsured motorist benefits to an insured. *Roberts v. Progressive Nw. Ins. Co.,* 151 S.W.3d 891, 899 (Mo.App.2004). "Subrogation exists to prevent unjust enrichment." *Keisker v. Farmer,* 90 S.W.3d 71, 75 (Mo. banc 2002).

■ Paragraph two of the Agreement states that Waldrop "agrees to hold for the benefit of [Shelter] all rights, claims and causes of action which [Appellant] has or may have against anyone other than [Shelter] for such bodily injury, sickness or disease." Waldrop objected to the settlement agreement because he sought to except claims he intended to make to his carrier American Family. A similar subrogation provision was struck down in *Schaeffer.* In that case, five plaintiffs, who were children of the decedent killed in accident by an uninsured motorist, made claim for the decedent's wrongful death under two insurance policies with uninsured motorist coverage totaling $200,000. 973 S.W.2d at 181. The insurer required the plaintiffs to execute a release before it

---

**2.** Shelter complains that Appellant's Point Relied On is not Rule 84.04(d) compliant. While it may not be an exemplary point relied on, it is not so deficient to render it unreviewable.

**3.** Appellant's other sub-points will not be addressed, since Appellant's fourth sub-point is dispositive.

made payment. *Id.* The subrogation provision required the plaintiffs to hold in trust all rights of recovery which the plaintiffs had against any other company for the insurer's benefit. *Id.* Plaintiffs were considering a product defect suit against Ford Motor Company, so they refused to sign the release for fear that the insurer would be entitled to the first $200,000 of any recovery of that suit. *Id.* The court reversed the trial court's judgment that granted the insurer summary judgment and remanded with directions to order insurer to pay plaintiffs $200,000. *Id.* at 183. In reaching this conclusion, the court stated "[o]nce the insurer satisfies its liability for uninsured motorist coverage its right of subrogation to any personal recovery against the uninsured motorist is established by ... section 379.203.4." *Id.* at 182. That statute states in relevant part:

> [I]n the event of payment to any person under the coverage required by this section, and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization **legally responsible** for the bodily injury for which such payment is made ... (emphasis added)

§ 379.203.4, RSMo 2000.[4] Gleaning meaning from the statutory language and the relevant case law, the court in *Schaeffer* clarified that "subrogation rights extend only to claims by the insured against the uninsured motorist." *Schaeffer*, 973 S.W.2d at 182 (citing *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716, 726 (Mo.App.1978); *Kroeker v. State Farm Mut. Auto. Ins. Co.*, 466 S.W.2d 105, 110–12 (Mo.App.1971)). In no uncertain terms,

this court in *Craig* said "the person legally responsible describes the uninsured motorist for whose delict the insurer has paid." *Craig*, 565 S.W.2d at 726. An insurer is not entitled to a release that grants more extensive subrogation rights than the law provides. *Schaeffer*, 973 S.W.2d at 182.

Applying *Schaeffer* to the facts of this case, Appellant wished to exempt a future claim against his *own* insurance policy, not one against the uninsured driver. Under section 379.203.4 and *Schaeffer*, paragraph two of Shelter's proposed Agreement is beyond the scope allowable by law. Under these facts Shelter's subrogation rights do not extend to Appellant's claims under his own uninsured coverage with American Family, but rather only to claims against the uninsured motorist, the tortfeasor, who in this case, is the hit and run driver. *See Schaeffer*, 973 S.W.2d at 182. Appellant has paid for and is entitled to receive funds for uninsured coverage under his own policy. Shelter may pursue against the tortfeasor, but not demand subrogation as against the injured passenger's insurer.

Furthermore, the *Schaeffer* plaintiffs considered bringing a products defect suit against Ford Motor Company for a vehicle defect, which if established that Ford is liable, could be found to have caused or contributed to the accident that killed the plaintiffs' mother. Here, Appellant sought to collect against American Family, Appellant's personal insurance company, which he alone contracted with to provide uninsured motorist coverage and that had no involvement in causing or contributing to the accident that resulted in Appellant's spinal injury. This court holds the trial court erred as a matter of law and reverses the judgment and remands the case with directions to order payment of $25,000 to Appellant upon his execution of

---

4. *Schaeffer* was decided under Missouri Revised Statutes (1994). Section 379.203.4 remained unchanged from Missouri Revised Statutes (2000).

the document acknowledging full satisfaction of the Appellant's uninsured motorist claim. *See id.* ("The insurer is entitled to a document which makes it clear that the insured will make no further claim against it for uninsured motorist coverage relating to the ... accident.").

All concur.