**Leslie HILL, Appellant,**

v.

**GOVERNMENT EMPLOYEE INSURANCE COMPANY, Respondent.**

**No. WD 74985.**

Missouri Court of Appeals,
Western District.

Nov. 20, 2012.

Application for Transfer to Supreme Court Denied
Dec. 18, 2012.

Application for Transfer Denied
Jan. 29, 2013.

Stephen R. Bough and M. Blake Heath, Kansas City, MO, for appellant.

Scott D. Hofer and James P. Maloney, Kansas City, MO, for respondent.

Before Division One: THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Leslie Hill ("Hill") appeals from the Circuit Court of Jackson County's grant of summary judgment in favor of Government Employee Insurance Company ("GE"). Hill contends that her claim for uninsured motorist coverage ("UM") against GE, with whom she had a policy, raised a genuine issue of material fact such that summary judgment was not warranted. For the reasons explained below, we affirm.

## Factual Background[1]

On September 13, 2008, Hill was injured when the automobile she was driving was struck from behind by a Dodge Ram being driven by Matthew Malone ("Matthew").[2] Hill was stopped at an intersection when Matthew struck her vehicle. Matthew was intoxicated at the time of the crash. The Dodge Ram that Matthew was driving was owned by his father, Phillip Malone ("Phillip"). Matthew was insured under his father's automobile insurance policy issued by GEICO General Insurance Company ("GEICO"); we will refer to this as the "GEICO policy" or "Malone policy."[3] Hill filed suit against Matthew, alleging negligence in the operation of the vehicle.

The GEICO policy contained liability coverage limits of $100,000. The GEICO policy covered both Matthew's negligent operation of the vehicle and Phillip's negligence as the owner. GEICO paid Hill its $100,000 liability limits under its policy in exchange for settlement of all claims against Matthew. By agreement of the parties, Phillip was not included in the release, even though it was his policy that funded the settlement of the claims against Matthew. Following the settlement with Matthew, Hill filed suit against Phillip for negligent entrustment of the vehicle to Matthew.

GEICO agreed to provide Phillip with a defense and hired an attorney to represent Phillip but stated in correspondence to Phillip that because GEICO had already paid out the liability limits under its policy to settle the claims against Matthew, there was no amount left under the policy limits to pay any judgment Hill may be awarded on her claim against Phillip. GEICO asserted that it was not denying liability coverage for the tort action against Phillip; rather, GEICO asserted that, while the claim against Phillip was covered by the terms of the policy, the existing liability coverage had been exhausted by the prior settlement payment.

Hill then brought this suit against her own insurance carrier, GE, in an attempt to recover under her "uninsured and underinsured motorist protection." Hill's petition against GE alleged that her damages were in excess of what she received from the settlement of her claims against Matthew under the GEICO policy. She alleged that Phillip was "not insured for this loss." In support, Hill attached the affidavit of Sheila Turner, a claims examiner with GEICO, who stated that Phillip had liability coverage but that GEICO had already paid out the policy limits to Hill under the claim against Matthew.

On September 26, 2011, GE filed a motion for summary judgment, arguing that Phillip was not uninsured as evidenced by his having a GEICO liability insurance policy in place that had previously paid out its limits to Hill for her injuries from the same accident. GE further argued that the appropriate coverage under which Hill could recover additional damages would

---

1. On review of a summary judgment, we view the record in the light most favorable to the party *against* whom the judgment was entered. All reasonable inferences are given to the *non-movant*. *Harpagon MO v. Bosch*, 370 S.W.3d 579, 581–83 (Mo. banc 2012).

2. We refer to Matthew Malone and his father, Phillip Malone, by their respective first names to distinguish one from the other. No disrespect or familiarity is intended.

3. The policies referenced here involve both GEICO General Insurance Company and Government Employees Insurance Company, which are not the same entity. To avoid confusion, we refer to the former as "GEICO" and the latter as "GE." The GEICO policy or Malone policy covered the Dodge Ram driven by Matthew and the GE policy covered the automobile driven by Hill.

have been underinsured motorist coverage ("UIM"), but the Hill policy did not include such coverage because Hill had failed to purchase such coverage.

In her reply, Hill argued that genuine issues of material fact existed involving whether a lack of available funds within the policy limits meant that Phillip was uninsured and that Hill's policy with GE ("Hill policy" or "GE policy") was ambiguous in its description of UM coverage.

On February 6, 2012, the trial court granted GE's motion for summary judgment on the basis that under the Hill policy, Phillip was not an uninsured motorist, and thus UM coverage would not apply. It further found that the Hill policy was clear and unambiguous.

Hill appeals.

## Standard of Review

This court reviews the propriety of the trial court's grant of summary judgment *de novo*. *Waldrop v. Shelter Mut. Ins. Co.*, 221 S.W.3d 401, 403 (Mo.App. W.D. 2006) (citations omitted). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party has a right to judgment as a matter of law. *Id.* "The record is read in the light most favorable to the party against whom summary judgment was granted, and all the facts properly pled by the nonmoving party and all inferences therefrom are assumed as true." *Id.* "Reversal of a grant of summary judgment is required if either (1) there is a genuine issue as to a material fact, or (2) the trial court erred as a matter of law." *Id.*

## Analysis

In Point One, Hill argues that the trial court erred in granting summary judgment to GE because "whether UM coverage applies turns on the tort liability alleged and whether coverage exists for that particular tort in that Hill's negligent entrustment claim can form the basis of her UM claim even though GEICO provided coverage for the negligent operation of the Dodge Ram." The gist of Hill's argument in Point One is that contract law does not govern whether UM coverage applies; rather, tort law does. Hill argues that her claim should survive because it is based in tort liability, which can specifically trigger UM coverage. Hill relies on our holding in *Stotts v. Progressive Classic Ins. Co.*, 118 S.W.3d 655 (Mo.App. W.D.2003) to support this proposition.

Hill points out that she made two separate and distinct claims in tort against two separate and distinct individuals, even though they are both covered under the same GEICO policy. Her claim against Matthew was based upon his negligent *operation* of the vehicle causing the accident in which she was injured. Her claim against Phillip was for a separate tort based on Phillip's negligence in *entrusting the vehicle* he owned to his son Matthew. Both parties agree that the GEICO policy covered the tort claims Hill brought against Matthew and Phillip. However, Hill argues that because the limits of the GEICO policy were then fully expended in her settlement with Matthew, that her remaining tort claim against Phillip is one for which coverage is no longer provided, thus implicating the UM coverage in her own policy with GE.

GE agrees that the tort claim against Matthew and the separate tort claim against Phillip were both covered by the GEICO policy. However, GE argues that because the limits of the GEICO policy were expended in settling Matthew's claim, while there is coverage under that policy for the claim against Phillip, there are no funds left to satisfy the second claim against Phillip. They argue that Phillip

was insured, even though there were no funds available from his policy left to pay this claim. Therefore, GE argues that Phillip was not an uninsured motorist under the terms of the GE policy.

It is important to first distinguish between which portion of the analysis is governed by contract law and which is governed by tort law. In *Gaunt v. State Farm Mut. Auto. Ins. Co.*, 24 S.W.3d 130, 136 (Mo.App. W.D.2000) we clarified that:

> [I]t is well established that the right of the injured party to recover from an uninsured motorist carrier arises from the insurance contract rather than in tort. Uninsured motorist insurance cases combine tort liability and contract liability into one action. *The obligation of the uninsured motorist to respond in money damages is governed by tort rules and that of the insurer is governed by contract.* (Emphasis added and citation omitted.)

Thus, GE's obligation is governed by contract law. The contract in question is the insurance contract which comprises the GE policy. GE's obligation regarding UM coverage is dictated by the policy terms of the GE policy and by section 379.203.1.[4] In contrast, the obligation of the alleged tort-feasor to pay money damages is governed by tort law and the funds could come from other sources such as an employer's policy, a personal liability policy, an umbrella policy or personal assets of the tort-feasor. Using two different lenses ensures that the obligations of each party are addressed appropriately.

▄▄▄ In Point One, Hill contends that GE is liable for UM coverage but bases that conclusion on tort law. However, GE's obligations are not established by tort law; rather, it is contract law and statutory interpretation that govern whether UM coverage applies. An analysis under tort law views the driver and the owner of the vehicle as separate tortfeasors and looks to see if each tort-feasor has separate liability insurance. The analysis is different when reviewing a policy based in contract law where, in the case of UM coverage, if *either* the driver or owner has insurance coverage for the accident, then typically UM coverage does *not* apply. In tort law, if the tort-feasor has no insurance coverage, then UM applies. *Stotts v. Progressive Classic Ins. Co.*, 118 S.W.3d 655 (Mo.App. W.D.2003). *See also Arnold v. American Family Mut. Ins.*, 987 S.W.2d 537 (Mo.App. W.D.1999).

We explained this concept in *Stotts v. Progressive Classic Ins. Co.*, 118 S.W.3d 655 (Mo.App. W.D.2003). In *Stotts*, the plaintiffs sued their insurer for UM coverage because although the driver had liability coverage, the owner of the vehicle did not. *Id.* at 659. Hill points to our language that

> the issue of whether a vehicle is considered uninsured, for purposes of § 379.230, does not turn solely on whether there was an owner's or operator's policy in effect at the time of the accident. Rather, it turns on the underlying tort liability alleged and whether there is coverage for that particular tort.

*Id.* at 664–65.

Our holding in *Stotts* clarified that where tort liability could lie, there should also be liability coverage for the alleged tort, and if there is not, then UM coverage could apply as to the uninsured tort-feasor. *Id.* at 666–67.

---

**4.** All references are to RSMo 2000 as updated through the most recent cumulative supplement unless otherwise indicated. Section

379.203.1 governs the required provisions of automobile liability insurance.

Hill also argues that our holding in *Arnold* should apply to the instant case. In *Arnold v. American Family Mut. Ins.*, 987 S.W.2d 537 (Mo.App. W.D.1999), we held that the parents of a deceased child could proceed with their wrongful death claim against a vehicle owner for negligent entrustment because although the negligent driver had a policy of liability insurance covering his actions, the owner of the vehicle did not. *Id.* at 541. Thus, the owner was uninsured as to the negligent entrustment claim, which should have triggered UM coverage under the owners' policy. We further explained that in *Arnold*, although there was a policy covering the negligent *operation* of the vehicle, there was not an owner's policy covering the owner's negligent entrustment of the vehicle to the operator. *Stotts*, 118 S.W.3d at 665. In sum, we looked to the tort alleged to see if there was an insurance policy that would provide coverage for that tort.

The problem with Hill's reliance on these holdings is that here, both the driver, Matthew, and the owner, Phillip, were covered by liability insurance carried by Phillip through the GEICO policy. The facts presented support that Phillip had insurance by virtue of his policy with GEICO. Thus, Hill's negligent entrustment claim against Phillip falls under the liability policy that was in effect. Thus, neither *Stotts* nor *Arnold* is on point since both of those cases involved a vehicle owner who was alleged to have negligently entrusted a vehicle and there was no policy of insurance in effect that would cover that claim. In this case, it is undisputed that the GEICO policy covered both the operator of the vehicle for his negligence and the owner of the vehicle for his separate negligence on the date of the accident.

Despite the existence of a valid liability policy, Hill argues that GEICO's refusal to indemnify Phillip against Hill's negligent entrustment tort action has the same effect as Phillip being uninsured; thus, GEICO's refusal to further indemnify Phillip should trigger UM coverage under the Hill policy. While it is true that where a certain tort is not covered by a tort-feasor's liability insurance, UM coverage could be triggered, those are not the facts here. Here, the owner of the vehicle, Phillip, was insured for the negligent entrustment claim. However, because the limits of the policy had already been paid, there were no remaining funds to cover this claim.

The trial court ruled in favor of GE based on the policy's terms which precluded GE from having to pay UM coverage where liability coverage was available through a policy covering both the driver and the owner of a vehicle. The court was persuaded that because Phillip's liability coverage was in effect and its limits were paid to Hill, uninsured coverage from Hill's own policy was inapplicable.

Under our *de novo* standard, we review the trial court's grant of summary judgment to determine whether no genuine issue of material fact existed, giving the moving party a right to judgment as a matter of law. The trial court found that GE was not under a contractual obligation as a matter of law to pay UM coverage. Based on the GEICO policy in effect, which both parties agreed was in effect, the court found no genuine issue of material fact with regard to GE's liability to pay UM benefits under the Hill policy. We agree with the trial court in its determination that no genuine issue of material fact existed with regard to the GE policy and the unavailability of UM coverage to Hill under the GE policy.

Point One is denied.

■ In Point Two, Hill argues that the trial court erred in granting summary judgment to GE because the "uninsured

status of a tortfeasor is a fact issue in that GEICO's refusal to indemnify Mr. Malone created a question of fact for the jury." Hill essentially argues that GEICO's refusal to indemnify Phillip against a potential recovery to Hill in the tort action changes Phillip's status to that of an uninsured vehicle owner. Hill argues that whether this metamorphosis occurred is a material fact that was in dispute, thereby precluding summary judgment on the issue.

Hill relies on our holding in *Pink v. Knoche*, 103 S.W.3d 221 (Mo.App. W.D. 2003) in support of her argument that whether a vehicle is uninsured is a factual issue for the jury. In *Pink*, we stated that "Missouri cases are clear that the uninsured status of the tortfeasor is a jury issue." *Pink*, 103 S.W.3d at 227 (citing *Woosley v. State Auto. Mut. Ins. Co.*, 600 S.W.2d 210 (Mo.App. E.D.1980) (where conflicting evidence exists concerning the insured status of a driver, it becomes a jury issue)). The dispute in *Pink* was over whether a reservation of rights letter amounted to a denial of coverage, or whether the insurance company's letter simply acknowledged the accident and stated that there *may* not be coverage, while reserving its rights to deny or provide coverage at a later time. *Pink*, 103 S.W.3d at 226. The trial court was proffered conflicting deposition testimony on the subject of whether the insurance company intended to cover the accident. *Id.* Ultimately, it excluded the evidence from trial, ruling that the uninsured status of the driver was settled as a matter of law. *Id.* We reversed because the issue of whether there was a denial of coverage was a disputed, dispositive factual issue that should have been decided by the jury. *Pink*, 103 S.W.3d at 227.

Under *Woosley* and *Pink*, the status of a motorist as insured or uninsured is a jury issue where there are conflicting facts presented that could "cause reasonable minds to draw different conclusions from the facts...." *Woosley*, 600 S.W.2d at 213. At issue in those cases was the existence of a policy, not the performance of the terms of the policy. In contrast to *Pink*, neither Hill nor GE disputes the existence of the GEICO policy. Both parties agree that the GEICO policy would have covered the negligent entrustment claim if the limits had not been previously expended in settling the claims against Matthew. Because both parties agree that a policy was in effect that would cover the claim, there was not a dispute over whether there was coverage in place. The dispute in this case is the legal effect of these undisputed facts. We find Hill's application of *Pink* unpersuasive.

The crux of the issue before the Court is whether exhaustion of liability policy limits and the resulting refusal of GEICO to pay more than the applicable policy limits change the status of Phillip from insured to uninsured such that the UM coverage provided in Hill's GE policy should apply. GE contends that GEICO's refusal to indemnify Phillip in the tort action was not a denial of coverage but rather a ramification of having already paid out the limits under a valid policy. We agree.

We find the analysis in *Brake v. MFA Mut. Ins. Co.*, 525 S.W.2d 109 (Mo.App. E.D.1975) persuasive. In *Brake*, the deaths of three people and serious injuries to four others were attributed to the negligence of a decedent tort-feasor. *Id.* at 110. The decedent's policy apportioned the limits of the policy, which was $10,000 per person or $20,000 per accident, between the various deceased's estates and injured persons, resulting in recoveries for much less than the statutory minimum coverage of $10,000 per person [5] as to each

5. This was the statutory minimum limit of

liability coverage required at the time of the

estate or individual. *Id.* The plaintiffs asserted that the statutory minimum amount of coverage should be available to each estate and injured person, and that to receive less should cause their own UM coverage to apply. *Id.* at 111. But the court held that where a motorist carried the minimum statutory amount of liability coverage, UM coverage did not apply even though numerous victims received less than the statutory minimum in recovered damages. *Id.* at 113–14. Indeed, "[n]o exception was made by the General Assembly for the protection of an injured party where multiple claims reduce his participation in the proceeds of the tortfeasor's policy." *Id.*

Here, Phillip carried a policy of $100,000, which is more than the statutory minimum coverage of $25,000 per person and $50,000 per accident.[6] Unlike the plaintiffs in *Brake*, Hill received more than the minimum coverage in her settlement with Matthew. Given that the *Brake* court reasoned that receiving less than the statutory minimum when a policy was exhausted would not trigger UM coverage, then receiving more than the statutory minimum when a policy is exhausted would also not trigger UM coverage.

Notably, the *Brake* court reiterated that uninsured motorist statutes exist "to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard policy." *Brake*, 525 S.W.2d at 112 (quoting *Webb v. State Farm Mut. Auto. Ins. Co.*, 479 S.W.2d 148, 151 (Mo.

App. W.D.1972)). Moreover, "it is the public policy of Missouri ... that each insured under [UM] coverage have available the full statutory minimum to exactly the same extent as would have been available had the tort-feasor complied with the minimum requirements of the financial responsibility law." *Webb*, 479 S.W.2d at 152.

Regardless of whether payment to a victim is made through UM coverage or pursuant to a valid liability policy, the limit of such recovery will still be the limits of the policy purchased; or the statutory minimum limits, whichever is greater. The legislature did not create an exception to the statute whereby the limits of a single policy could be extended.[7] Indeed, the *Brake* court specifically considered cases[8] in other jurisdictions where recovery was allowed under UM coverage where, although the tort-feasor was not uninsured, his insurance was not sufficient to cover multiple claims arising out of the same occurrence because his limits were exhausted. The *Brake* court declined to follow the reasoning of such cases and refused to hold that " 'uninsured' includes 'underinsured.' " *Brake*, 525 S.W.2d at 114.

Likewise, in *Ward v. Am. Family Ins. Co.*, 783 S.W.2d 921 (Mo.App. E.D.1989), the Eastern District held in favor of an insurance company after determining that where two claims were covered by one insurance policy (an injury claim and a derivative loss of consortium claim), and the liability limits of the policy had been exhausted by the injury claim, the award

accident in that case.

**6.** *See* section 303.190.2(2). These are the current statutory minimum limits of liability coverage.

**7.** This is to be distinguished from the concept of "stacking" policies, which is allowed in Missouri in some situations, but inapplicable

to the case at bar. *See generally Bauer v. Farmers Ins. Co.*, 270 S.W.3d 491, 492–93 (Mo.App. W.D.2008).

**8.** *Brake* 525 S.W.2d at 113, citing *Porter v. Empire Fire and Marine Ins. Co.*, 106 Ariz. 274, 475 P.2d 258 (1970).

of damages to the husband for loss of consortium was non-compensable. *Id.* at 925. There, as here, the policy limit was paid out to one claimant, leaving nothing for the other claimant. Missouri courts have "not been willing to use the statute to create coverage" and have "declined to create uninsured motorist coverage where no coverage was applicable...." *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 147 (Mo. banc 1980).

Uninsured coverage has also been deemed inapplicable to situations where liability coverage has actually been denied by virtue of a household or family exclusion clause. In *Hussman v. GEICO*, 768 S.W.2d 585, 586 (Mo.App. E.D.1989), a couple was injured in a car accident and the husband driver was found to be sixty percent at fault. Under the family exclusion clause, the husband was ineligible for liability coverage under his own policy since the injured claimant, his wife, was related to him. *Id.* at 587. After the wife settled with the other driver, she attempted to get UM coverage from her own policy based on her husband's lack of liability coverage which she argued changed him into an uninsured driver. *Id.* The court held that UM coverage was unavailable to the wife under these facts. *Id.* at 588.

The Eastern District clarified the difference between UM coverage and UIM coverage, noting specifically that where, as here, there was not enough liability insurance to pay out all the claims, only a claimant's UIM coverage would be implicated, not UM coverage.

Though similar, **un**insured motorist coverage and **under**insured motorist (UIM) coverage are not the same thing. The former refers to coverage intended to provide a source of recovery for insureds who are legally entitled to recover damages for bodily injury caused by the negligent owner or operator of a completely uninsured motor vehicle. UIM coverage, on the other hand, refers to coverage intended to provide a source of recovery for insureds (up to the insurer's liability limit for such coverage) who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to fully pay for the injured person's actual damages.

*Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo.App. E.D.1999) (citing *Hopkins v. Am. Econ. Ins. Co.*, 896 S.W.2d 933, 935 (Mo.App. W.D.1995); *Krombach v. Mayflower Ins. Co.*, 785 S.W.2d 728, 733 (Mo. App. E.D.1990)).

The reasoning found in *Niswonger* was in accord with the Southern District's holding in *Rister v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 132 (Mo.App. S.D. 1984). *Rister* held that, where the insured had settled a disputed liability claim against the tort-feasor's insurer, the insured was not entitled to recover under his uninsured motorist coverage; for, in fact, he did recover on his claim against the liability insurer for the tort-feasor, as evidenced by the settlement. *Id.* at 136. While the court noted that this might discourage settlement with the tort-feasor's carrier if the insured also wanted to recover from the uninsured motorist carrier, it said this concern "cannot be made the basis of imposing liability upon an uninsured motor vehicle insurer when, within the plain meaning of the insurance contract, none exists otherwise." *Id.*

Finally, *Sayers v. Laramie*, 809 S.W.2d 147 (Mo.App. E.D.1991), reaffirms *Rister's* approach. It notes that *Rister* "implicitly depended upon a finding that plaintiff was not entitled to accept a settlement from the driver's liability carrier because the driver was insured and thereafter, contin-

ue to claim and bear the burden to prove the driver was an uninsured motorist." *Sayers*, 809 S.W.2d at 148. Indeed, they are mutually exclusive when the claimant first settles a tort claim with the liability carrier with the intention of pursuing a contract claim for UM coverage against his own carrier. *Id.* The settlement of the first claim is an admission that the driver was insured; plaintiff accepted the settlement because the driver was an insured motorist and "could not thereafter prove that the driver was uninsured." *Id.*

The underlying issue is whether the exhaustion of policy limits that renders a potential tort-feasor unable to pay an adverse result against him makes that tort-feasor "uninsured" for purposes of UM coverage. In light of the holding in *Brake* and the other aforementioned cases, we determine that exhaustion of a liability policy's limits does not change the insured's status to that of "uninsured." GEICO's refusal to further indemnify Phillip under his policy was not a denial of coverage; rather, it was an exhaustion of the policy limits. Phillip had liability coverage for potential tort actions against him, just not sufficient coverage. For these reasons, we disagree with Hill's assertion that the status of Phillip as either insured or uninsured was a disputed factual issue that the jury should decide; rather, under the undisputed facts of this case, his status remained that of an insured as a matter of law.

Point Two is denied.

### Conclusion

The refusal of GEICO to indemnify Phillip in the negligent entrustment tort action was based on the exhaustion of his policy limits, not on the non-existence of coverage under the policy. So long as the underlying policy limits meet or exceed the statutory minimum coverage, an exhaustion of

policy limits does not change the insured's status to that of uninsured. Therefore, as a matter of law, under the undisputed facts of this case, Hill could not recover UM coverage from GE under the GE policy, making summary judgment appropriate.

We affirm.

All concur.