

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| ANDREW GARRETT, | ) | |
| | ) | |
| Appellant, | ) | WD78443 |
| | ) | |
| v. | ) | OPINION FILED: September 6, 2016 |
| | ) | |
| MICHAEL BROWN, | ) | |
| | ) | |
| Respondent. | ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Kevin D. Harrell, Judge

Before Division Three: Joseph M. Ellis, Senior Judge, Presiding[1], Karen King Mitchell, Judge and Gary D. Witt, Judge

Appellant Andrew Garrett ("Garrett") appeals the grant of summary judgment by the Circuit Court of Jackson County, in favor of Respondent Michael Brown ("Brown"). While working as a billposter for CBS Outdoor, Garrett was injured when he fell while climbing a billboard structure. He brought suit against his co-employee and supervisor, Brown, for violating the duty of care owed to Garrett. The court granted summary judgment finding that Brown could not be liable for Garrett's injuries because they were

---

[1] Judge Ellis retired as an active member of the court on March 1, 2016, after oral argument in this case. He has been assigned by the Chief Justice to participate in this decision as Senior Judge.

caused by CBS Outdoor's non-delegable duty to provide a safe work environment. Garrett alleges that the court erred in granting summary judgment because there was a genuine issue of material fact as to whether Brown violated the policies of CBS Outdoor causing Garrett's injuries and thus, may be liable. We reverse and remand.

## Factual Background[2]

In 2007, Garrett worked for CBS Outdoor as a billposter installing billboard signs. Brown served as his supervisor. As a billposter, Garrett would climb billboard structures to hang advertising signs on the structures. On October 26, Garrett was using a ladder to climb a billboard structure. The cross-brace on which his ladder was resting snapped, causing him to fall and suffer injury.

CBS Outdoor had a Safety Manual that it and its employees were required to follow ("Safety Manual"). Section 19 of the Safety Manual required Brown, as Operations Manager of the Kansas City market, to complete or schedule annual safety inspections of each structure using a specific document entitled Structure Maintenance and Safety Checklist. Garrett alleges that, during his employment and prior to the October 26 accident, Brown did not perform the required annual inspections of the billboard structures. Additionally, prior to October 16, Brown routinely ignored reports from billposters of structures that appeared to be unsafe. At times, after Brown received a report of a potentially unsafe structure from one billposter, he would immediately send a second

---

[2] On review of summary judgment, we view the record in the light most favorable to the party against whom the judgment was entered. *Hill v. Gov't Emp. Ins. Co.*, 390 S.W.3d 187, 189 n. 1 (Mo. App. W.D. 2012). "All reasonable inferences are given to the non-movant." *Id.*

2

billposter to the structure in question without inspecting the structure or informing the second billposter that a safety concern was raised.

Due to Brown's prior behavior, although Garrett had concerns about the structure upon which he was working on October 26, he did not report his safety concerns prior to climbing the structure. Garrett brought suit against Brown claiming that Brown's violation of CBS Outdoor policy caused his injury.

Brown sought summary judgment, arguing that, under the circumstances, he could not be liable as a co-employee for Garrett's workplace injury as it fell under the employer's non-delegable duty to provide a safe workplace. The circuit court agreed, granting his motion. Garrett appeals.

### Standard of Review

When considering appeals from summary judgments, [an appellate c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record. Our review is de novo because [t]he criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. Thus, [t]he propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*McComb v. Norfus*, WD 77761, at *3 (Mo. App. W.D. Sept. 6, 2016) *quoting ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (internal citations and quotation marks omitted).

3

## Analysis

Garrett's sole point on appeal contends that summary judgment was improper because there exists a genuine issue of material fact as to whether Brown's actions constituted a breach of his employer's non-delegable duty to maintain a safe work environment or a breach of Brown's own personal duty of care owed to Garrett. We agree.

There have been a number of changes to Missouri's law on co-employee negligence since 2005. In 2005, the Missouri legislature amended § 287.800 to require the Workers' Compensation Act ("Act") to be strictly construed. In 2010, this Court held that strict construction no longer allowed co-employees to be immunized under the statutory definition of "employer" effectively removing those employees in some circumstances from protections under the Act. *Robinson v. Hooker*, 323 S.W.3d 418, 423-25 (Mo. App. W.D. 2010). In 2012, the legislature again amended the Act by shielding co-employees from civil liability unless their actions "purposefully and dangerously" injure a party. § 287.120 (2012). There exists then a body of law devoted to determining co-employee liability for workplace injuries that occurred between the effective dates of the 2005 and 2012 amendments of the Act. Because Garrett's injury occurred in 2007, we will only be discussing the statutes and case law applicable to this limited timeframe.

In *Hansen v. Ritter*, this Court noted that "*Robinson* neither created nor defined the rights or remedies of an injured person against co-employees but merely acknowledged that whatever rights and remedies were available 'at common law or otherwise; were not barred by the exclusivity provisions of the Act." 375 S.W.3d 201, 207 (Mo. App. W.D.

4

2012). The court found that, it is only when "a co-employee . . . has violated an *independent* duty to an injured employee [will the co-employee] be 'answerable to such person for the consequences of his negligence.'" *Id.* at 213, *quoting Giles v. Moundridge Milling Co.*, 173 S.W.2d 745, 751 (Mo. 1943).

Two years later, in *Leeper v. Asmus* this Court attempted to further clarify the state of co-employee liability for workplace injuries. 440 S.W.3d 478 (Mo. App. W.D. 2014). In doing so, we began by discussing the "something more" test which existed prior to the 2005 amendment of the Act which operated to immunize co-employees from liability for ordinary negligence. *Id.* at 490-92.[3] We found the test, as applied in Missouri, was inconsistent with the common law. *Id.* at 492. As a result, we established a two-step analysis that was consistent with the common law to assist triers of fact in determining co-employee liability. For injuries occurring between 2005 and 2012, the analysis to be applied is:

> [I]t must first be determined whether a workplace injury is attributable to a breach of the employer's non-delegable duties. If yes, then a co-employee's negligent act or omission will not support a personal duty of care in negligence as a matter of law, regardless whether the act or omission can be characterized as "something more." If no, then a co-employee's negligent act or omission may support an actionable duty of care in negligence, regardless whether the act or omission can be characterized as "something more."

*Id.* at 494 (internal footnotes omitted).

*Leeper* identifies five non-delegable safety duties owed by employers: (1) "provide a safe place to work"; (2) "provide safe appliances, tools and equipment for the work"; (3)

---

[3] *Leeper* provides a complete and thorough discussion of the development of the "something more" test under Missouri law. It is not necessary for the disposition of this case to reproduce the discussion here.

5

"give warning of dangers of which the employee might reasonably be expected to remain ignorant"; (4) "provide a sufficient number of suitable fellow employees"; and (5) "promulgate and enforce rules for conduct of employees which would make the work safe." *Id.* at 484 (quoting W. Prosser, LAW OF TORTS, section 80, p. 526 (4ᵗʰ ed. 1971). If an injury is caused by a breach of one of these non-delegable duties, a co-employee is not liable. *Id.*

According to *Leeper*, the injury must be caused "solely" by the breach of duty by the co-employee. *Id.* at 496, n.16.

The Missouri Supreme Court recently clarified the holding of *Leeper* and sought to better define co-employee liability. *Peters v. Wady Industries, Inc.*, 489 S.W.3d 784 (Mo. banc 2016); *Parr v. Breeden*, 489 S.W.3d 774 (Mo. banc 2016).[4] In *Peters*, the Court noted that "to the extent that [*Leeper*] holds that that the existence of a duty is not purely a question of law" it is overruled. As this Court noted in *McComb*, however, in all other respects, *Leeper* remains good law including its holding that "'the starting point is to *first* determine whether a workplace injury is attributable to a breach of the employer's nondelegable duties' and that this *causation* (as opposed to *existence*) determination 'is a question of fact.'" *McComb*, WD77761 at *7 (quoting *Leeper*, 440 S.W.3d at 489, 494). In other words, "the question becomes where the employer's non-delegable duty ends and

---

[4] We find *Parr* to be distinguishable from this case. In *Parr*, the court examined whether the plaintiffs had adequately proved the existence of a duty on the part of the co-employee that was separate and distinct from the duty owed by the employer. *Parr*, 489 S.W.3d at 782. In this case, Garrett does not challenge that CBS Outdoor had a non-delegable duty but rather argues that the actions of Brown fell outside the scope of that duty.

6

the employee's independent duty begins." *Abbot v. Bolton*, ED100773, 2016 WL 4097509, at *3 (Mo. App. E.D. August 2, 2016).

Brown's Motion for Summary Judgment argued, and the circuit court found, that Garrett's injuries were caused by CBS Outdoor's failure to provide a safe workplace and thus there could be no co-employee liability. The court relied on Garrett's own admission that "[b]ut for the structurally unsafe condition of the billboard for which [he] fell, [he] would not have suffered [his] alleged injuries. . . ." Applying Garrett's statements to the two-part test established in *Leeper*, the court held that the injury was caused by a non-delegable duty of the employer under the first step and thus, it did not need to proceed to the second step and there was no co-employee liability.

On appeal, Garrett argues that the circuit court erred in entering summary judgment because there exists a genuine issue of material fact as to whether his injury was caused by a breach of CBS Outdoor's duty or a personal duty owed by Brown to Garrett. He contends that Brown violated a personal duty owed to Garrett by violating CBS Outdoor's policies regarding workplace safety. In support of this, Garrett relies in large part on this Court's recent ruling in *McComb*.

In *McComb*,[5] a hospital delivery driver, Edward McComb, died while driving his route in bad weather conditions. WD77761 at *1. Both before and during his shift he contacted his supervisor, who in turn contacted another supervisor, regarding the cancellation of his shift due to hazardous road conditions and the nonemergency nature of

---

[5] *McComb* was originally decided April 21, 2015, after the circuit court entered judgment in the case at bar on February 5, 2015. Following the Supreme Court's decisions in *Parr* and *Peters*, *McComb* was reissued on September 6, 2016.

7

the items he was to deliver that day. *Id.* at *2. Both times McComb was instructed to continue driving his route. *Id.* at *3. Near the end of his shift, McComb's vehicle slid off the road resulting in his death. *Id.* Following McComb's death, his wife brought suit against the two supervisors that instructed McComb to continue his route. *Id.* The trial court granted summary judgment to supervisors who argued the suit was barred by the workers' compensation statute's exclusivity provision. *Id.* This Court reversed and remanded the matter for further proceedings. *Id.* at *7-12.

The Court cited to *Leeper* noting if "an employee's workplace injury can be attributed to the employer's breach of a nondelegable duty, then a negligent co-employee owes no duty in negligence to the injured employee as a matter of law." *Id.* at *8. It further notes, however, that under the analysis of *Leeper*, "the rule that the master is bound to see that the environment in which a servant performs his duties is kept in a reasonably safe condition is ***not applicable*** where that environment becomes unsafe ***solely*** through the default of that servant himself, or of his fellow employees." *Id.* at *9, quoting *Leeper*, 440 S.W.3d at 488.

*McComb* held that there were a number of relevant facts and circumstances still in dispute regarding the safety of the work environment and those questions of fact were material and precluded summary judgment. Specifically, the Court highlighted three factual questions that were relevant:

1. Did employer have a policy regarding whether couriers should be sent on their route during inclement weather? "[I]f it did not have such a policy, then [McComb's] death would be attributable to his employer's failure to discharge

8

its non-delegable duties to provide [McComb] with a safe workplace and to ensure that the work instrumentalities were safely used, and [Supervisors] would face no personal liability." *Id.* at *10. The court also recognized the relevance of facts such as "whether the policy is communicated effectively," "whether training and supervision are provided," and "employer's awareness and acceptance of deviations from the policy." *Id.* at *9, n.10.

2. Was any relevant policy followed? "If not . . . [McComb's] death may have been attributable to a personal duty owed by his co-employees." *Id.* at *10.

3. If the policy was violated by keeping McComb on his route did his supervisor's violation of the policy "alone, render [McComb's] otherwise safe work environment unsafe?" *Id.* at *11. "If so, then [McComb's] death was likely attributable to a personal duty owed him by [Supervisors], subjecting them to potential liability under the common law." *Id.*

These questions were intended to determine whether there was an otherwise safe work environment established by the employer but that McComb was injured as a result of decisions co-employees made contrary to company policies. An employer may meet its duty of establishing a safe workplace but the workplace may be rendered unsafe by a co-employee failing to follow guidelines established by the employer for safety. *Leeper*, 440 S.W.3d at 496; *McComb*, WD77761 at *11. Where the employer establishes a safe environment but co-employee violates workplace rules to cause an unsafe environment the co-employee may have violated a "personal duty" owed to plaintiff.

9

This is not to say, however, that an employer may simply delegate safety to a co-employee. *Leeper*, 440 S.W.3d at 493 ("Charging a co-employee with a personal duty to protect a fellow employee from the risk of operating a dangerous instrumentality of work violates a core maxim by ascribing to the employee the responsibility of performing the employer's nondelegable duties."); *Hansen*, 375 S.W.3d at 217 ("[A] co-employee's personal duties to fellow employees do not include a legal duty to perform the employer's non-delegable duties. Unless a petition asserts a personal duty owed by a co-employee that exists independent of the employer's non-delegable duties, and thus a duty that would exist independent of the master-servant relationship, the petition will not survive a motion to dismiss for failure to state a cause of action for negligence.") Instead, a co-employee may be liable where an individual employee acted to render the work environment unsafe. "When . . . the employee's injuries result from a co-employee's negligence in carrying out the *details of the work*, the injuries are attributable to the co-employee's breach of a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace." *Peters*, 489 S.W.3d at 796.

In *Peters*, an employee sought recovery from his employer's project manager, under a theory of co-employee liability, for an injury resulting from the "stacking, loading, and transporting" of dowel baskets in an unsafe manner that had "become standard operating procedure." *Id.* at 799. The Court found that the employee alleged he was injured because he was ordered to conduct his work in an allegedly unsafe manner "in the course of business." *Id.* at 800. This distinguished the case from a situation in which "a co-employee negligently carried out some detail or aspect of his work." *Id.*

10

"The employer's duty to provide a safe workplace is not unlimited." *Id.* at 795. An employer's duty "does not extend to protecting them from the transitory risks [that] are created by the negligence of the [employees] themselves in carrying out the details of that work." *Id.* As stated in *Abbot*:

> [W]here the employer directed the employee to act in a negligent manner or had a negligent standard operating procedure in place, the employee's negligence is subsumed in the employer's duties; however, where the employee is negligent on his own *in carrying out the details of the work*, any resulting injuries are attributable to the employee's breach of his or her separate and distinct common-law duty of care.

*Abbot*, 2016 WL 4097509 at *3.

We find the facts of this case, as they exist at this stage, to be more similar to that of *McComb* and *Abbot* than that of *Peters*, and warrant remanding the case for further factual determinations. Like *McComb* and *Abbot*, the employee made allegations that the behavior of the co-employee exceeded the *scope* of the employer's non-delegable duty. That the employer had established a safe work environment but that the co-employee acted on his own in carrying out the details of his work in a dangerous or negligent manner. In *Peters*, there was no allegation that the employer attempted to create a safe work environment beyond simply directing the project manager to create such an environment. Thus, to the extent that the project manager acted negligently, it was merely on behalf of the employer. In this case, Garrett specifically alleged that CBS Outdoor had written regulations in place directing Brown how to create a safe work environment. To the extent that evidence may show that Brown failed to follow those procedures, despite proper

11

oversight by CBS Outdoor, Garrett's injury could have been caused solely by his co-employee's negligence because it was outside the *scope* of CBS Outdoor's duty.

Garrett alleges that his injuries were caused by Brown's failure to adhere to the policies of CBS Outdoor. He alleges his injuries were caused by the "structurally unsafe condition of the billboard" from which he fell.[6] CBS Outdoor implemented policies to keep those billboards safe, and it instructed Brown to implement its safety policies to make the billboards safe. The question then becomes, was it solely Brown's failure to follow the policy which caused the billboard in question to be unsafe, or was it CBS Outdoor's failure over time to enforce its policy which caused the billboard to be unsafe?

There are facts in the record to suggest that Brown's violations of the CBS Outdoor's policy regarding the inspection and repair of billboards was a longstanding issue. However, there is nothing in the record as to CBS Outdoor's knowledge of the violations and what steps they may or may not have taken to enforce the policy. If CBS Outdoor had the policy and took reasonable steps to ensure that the policy was communicated to Brown, that Brown was properly trained on the policy and that the policy was enforced by Brown, then Brown's violation of the policy under these facts may have constituted a violation of his personal duty owed to his co-employee Garrett. *See McComb*, WD77761 at *9-11. However, if CBS Outdoor was aware of longstanding violations of the policy by Brown and took no reasonable action to enforce the policy, then it may be found that CBS Outdoor

---

[6] The record contains a number of these admissions stating that "[his] injury was caused, at least in part, by the fact that his workplace . . . was not reasonably safe."

12

failed to discharge its non-delegable duty to provide a safe work environment for Garrett and Brown and would face no liability. *Id.* at *10-12.

## Conclusion

Because there is a genuine issue of material fact as to this narrow issue, we reverse the grant of summary judgment and remand the matter to the trial court.

_____
Gary D. Witt, Judge

All concur

13